THE PEOPLE, FOR THE USE OF THOMAS SPRINGETT, V.
WILLIAM COLERICK ET AL.

*Sheriffs—Neglect to file notice of attachment—Assignment for benefit
of creditors—Bond of assignee—Equity of redemp-
tion—Charge to jury.*

1. A sheriff who receives a writ of attachment at one o'clock in the
morning, with directions to levy upon real estate known to him,
he being *then* at the county-seat of the county in which the land
lies, where he remains long enough to have made such levy and
filed the statutory notice, and then goes to a town 22 miles dis-
tant for the purpose of attaching personal property, where he
levies on said land sometime in the afternoon, prior to which
time, and after he leaves the county-seat, the debtors execute a
mortgage on the land, which is placed on record, whereby the
plaintiff fails to collect anything on the judgment rendered in
his favor in said attachment suit, is liable upon his official bond
for the damages sustained by the plaintiff through his negli-
gence.[1]

2. An assignment for the benefit of creditors is ineffectual to convey
title to the assignee until the bond required by How. Stat. § 8739,
is filed with and approved by the clerk of the circuit court.
*Beard v. Clippert*, 63 Mich. 718, 719.

3. Creditors have the right to attach the equity of redemption of their
debtor in land mortgaged by him; and, in a suit against a sheriff
for failing to execute such writ, he cannot defend by showing
that the interest of the debtor has been cut off by foreclosure pro-
ceedings under said mortgage.

4. For a statement of the law regulating the action of a sheriff in
serving a writ of attachment, as far as diligence is concerned, see
plaintiff's requests on pages 368–370 of opinion, which the Court
hold should have been given to the jury.

5. It is mischievous error for the trial judge to give undue prom-
inence to portions of the testimony in a case in his charge to the
jury.

Error to Lapeer.    (Stickney, J.)    Argued June 9 and 10,
1887.    Decided October 27, 1887.

---

[1] See *Beard v. Clippert*, 63 Mich. 716, for an interesting case on this
question.

Debt on sheriff's bond.   Plaintiff brings error.   Reversed.
The facts are stated in the opinion.

*Dwight N. Lowell (A. B. Maynard,* of counsel), for
appellant.

*Geer & Williams,* for defendants.

SHERWOOD, J.   In 1883 the defendant Colerick was sheriff
of the county of Lapeer, and the other defendants were his
bondsmen.

On the eleventh day of February, 1884, the plaintiff com-
menced suit by attachment in the circuit court for the county
of Lapeer, against William E. Merritt and Frederick V.
Balch.   The writ was directed to said sheriff, and placed in
his hands for service, with direction to execute its command.

The declaration then alleges that said sheriff did on the
day the writ was issued, and before 9 o'clock A. M., attach
certain lands of the defendants by virtue of the writ, and
that it became the duty of the sheriff to protect and preserve
such lien by forthwith filing the necessary copy of the levy
required by law in the office of the register of deeds of said
county, but that he neglected so to do until the twelfth
day of February, at 4 o'clock P. M., thereafter, by reason of
which negligence the plaintiff lost his lien, which was of
great value by reason of his having obtained judgment against
Merritt & Balch in the suit thus commenced for the sum of
$665.15 damages, and costs taxed at the sum of $36.50.   That
he has been unable to collect said judgment on execution
issued for that purpose; and that said sheriff did not per-
form the condition of his bond by faithfully performing the
duties of his office in the service of said writ of attachment,
and in protecting the lien thereunder to satisfy such judg-
ment, but negligently, carelessly, and fraudulently failed to
deposit a certified copy of the writ, with a description of the
lands levied upon, when he made his levy, in said register's

office, and that by means thereof the defendants conveyed and incumbered the lands so attached before the filing of the said levy with the said register, whereby the plaintiff lost the benefit of the seizure under his writ, to his damage $10,000; and that said sheriff had ample time after such seizure, and before the said conveyance and incumbrance, to deposit such copy with said register.

The defendants all appeared and pleaded the general issue.

The cause was tried before the circuit judge and a jury, and the defendants obtained the verdict in their favor.

The plaintiff brings error.

From the record it appears that Merritt & Balch purchased the real estate levied upon of James S. Johnson, on the tenth day of February, 1883, and on the same day gave back a mortgage to Johnson for the sum of $400, payable on the first day of February, 1884, with interest at 8 per cent. This mortgage was foreclosed by advertisement, and the property sold to William W. Taylor, one of the sheriff's sureties, on the twenty-second day of July, 1884.

Neither Mr. Merritt nor Mr. Balch was sworn in the case; but it appears from the testimony, undisputed, that the lands purchased of Johnson were used by them as manufacturing grounds, and that several buildings were erected thereon, containing a large amount of material, and used in the manufacturing of heading.

And it further appears that on or about the twenty-ninth day of December, 1883, the said Merritt & Balch made a general assignment of all of their property for the benefit of their creditors, to Uriel Townsend, of Almont, in Lapeer county.

The claim upon which the attachment in this case was issued is not disputed, and it appears that the plaintiff had made an attempt to enforce said claim by attachment, but failed because of inability to get service before the assignment was made and filed. The defendant sheriff was the

officer intrusted with the service of *that* writ. About the time the writ in this case was issued, the plaintiff and assignee seemed to understand that the assignment was of no validity.

Mr. Townsend was sworn as a witness on the part of the defendants, and upon this subject he testified:

"The property was seized and taken from my possession by the officers. I was notified that the assignment was unconstitutional, and they took possession of the property. Since then I have exercised no acts of ownership over the property, and have attempted in no way to claim or to reclaim the property."

With this understanding, the plaintiff, on the eleventh day of February, 1884, renewed his suit by attachment, and we now have a suit before us for consideration, based substantially upon the alleged negligence of the sheriff in making service of the writ and filing notice thereof.

The plaintiff, apprehensive of the necessity for haste in the matter, took the precaution to go to the sheriff's office or house the evening before, it being Sunday evening, for the purpose of notifying him of the necessities of the case, and informed him that the writ would be issued and ready for him soon after midnight. It is conceded by the testimony that the sheriff received the writ about 1 o'clock in the morning, and the plaintiff and Mr. Ash, who had a claim against Merritt & Balch, depending upon the same state of facts, and who had also taken out an attachment, and was with the plaintiff at the time to give his writ to the sheriff for service, both testify that, when the plaintiff handed his writ to the sheriff, he told him he wished him to attend to it immediately; that he said to him:

"I want you to execute the writ. We know we are ahead this time. I told him to levy on the real estate of Merritt & Balch. He knew what land to levy on."

Plaintiff further stated that the sheriff told him that he then levied upon the real estate. This interview he says

occurred at the city of Lapeer, the county-seat, and but a short distance from the register's office.

The sheriff denies that he was requested by the plaintiff to make a levy on the real estate, or that he told the plaintiff and Ash that he had made such levy that night, but says these were the first writs that came into his hands. He further says that the plaintiff told him:

"I want you to go to Almont now [a town 22 miles distant] as soon as you can, and attach all the property of Merritt & Balch."

It further appears by the record that the sheriff remained in Lapeer until a quarter past 8 o'clock in the morning, during which time the sheriff says he saw the plaintiff's attorney, who told him to go to Almont as quick as he could, and attach all the property there; that there was a "lot" of personal property there. The plaintiff's attorney also testified that at this time the sheriff told him he had levied upon the real estate. This, however, the sheriff denies. He proceeded to Almont, and made his levy on the real estate sometime in the afternoon after, and did not return to Lapeer until the afternoon of the twelfth.

It further appears from the testimony that after he left for Almont, where the property all was, on the eleventh, and before he made his levy, Merritt & Balch executed a mortgage for $2,100 upon the real estate to Warren Balch, and the same was placed upon record at 11 o'clock and 15 minutes of the same day, whereby the plaintiff was deprived of the opportunity of securing anything out of which to collect his judgment.

The plaintiff claims in any event, under the instructions, as the sheriff states them, received from the plaintiff and his attorney, it was his duty to make the levy upon the real estate early on the morning of the eleventh, and file a copy of the same in the register's office as required by How. Stat.

§§ 7990, 7995, and that he was negligent in not so doing, to plaintiff's great damage.

The sheriff's claim of defense is that, under the instructions he received from the plaintiff and his attorney, as he states them, he was excused from making the levy upon the real estate and filing a copy with the register before he went to Almont, and, however that may be, that by reason of the assignment of Merritt & Balch to Townsend, on the twenty-ninth of December, 1883, the legal title to the real estate passed to Townsend, and that defendants in the execution had no land to levy upon, and that at the time of the trial the title to the land levied upon had been entirely lost by reason of the foreclosure and sale upon the Johnson mortgage.

Upon these two theories the cause was tried, and by the court submitted to the jury.

I think, under the undisputed testimony as to the directions given to the sheriff, he should have made his levy upon the real estate before he started for Almont on the eleventh. The necessities of the case and the occasion were clearly made known to him, and parties' rights cannot be jeopardized under such circumstances with impunity.

The plaintiff's proofs, when he rested his case, if the testimony was believed by the jury, clearly made out a case against the defendants.

The defendants' proof of the assignment was objected to, for the reason that there had been no approval of the bond by the clerk as required by statute, and that no title to the property under the assignment could pass until such approval was had.[1] There was no evidence in the case, either verbal or written, that any such approval was made, and, as this was essential to defeat the title of the assignors, I think the objection was well taken, and the rulings of the court upon this subject were erroneous. *Munson v. Ellis,* 58 Mich. 331;

---

[1] How. Stat. § 8739.

*Beard v. Clippert,* 63 Id. 717; *Stevenson v. Bay City,* 26 Id. 44; *Fuller v. Hasbrouck,* 46 Id. 82; *Coots v. Radford,* 47 Id. 37; *O'Marrow v. Port Huron,* Id. 586.

The mortgage given to Johnson, and the proceedings taken in foreclosing the same, and selling the property to Taylor thereunder, were all offered in evidence, against the objection of plaintiff's counsel that they were—

"Incompetent and immaterial; that whatever may have been the rights of Mr Johnson as mortgagee of the property, it could not in any way affect or vary or alter the rights of Thomas Springett and John Ash as attaching creditors; that they had the right to attach the equity of redemption, and they stand in the same position as though there were no mortgage, except as between them and Mr. Johnson. In other words, there was an interest in the property which they had a right to levy upon, and it in no way tends to excuse the default of the sheriff in this case."

I think this objection should have been sustained, for the reason given by plaintiff's counsel.

The foreclosure had not been commenced until after the levy upon the real estate. The first insertion of the notice of sale was not made in the newspaper until the twenty-fourth day of April, 1884.

The following 10 requests of the plaintiff's counsel should have been given to the jury without modification, viz. :

"1. If you find that the defendant Colerick was elected sheriff of the county of Lapeer at the general election held in November, 1882, and that he filed the bond in question in this suit at or before the commencement of his term of office, January 1, 1883, and that said bond was duly approved by the circuit judge, Hon. W. W. Stickney, before it was filed with the treasurer of Lapeer county, and after it was signed by the defendants in this case, then you must find that defendant Colerick was *de facto* sheriff of Lapeer county, whether he renewed and filed his bond January, 1884, or not, provided you find that he had not been removed or resigned his said office."

"4. The plaintiff named in any writ of attachment has the right to direct the officer in the performance of his duty in the execution thereof; and if you find that plaintiff,

Springett, at the time of placing said writ of attachment in defendant Colerick's hands for service, informed him of such facts as required prompt action, and directed him to use dispatch, then an increased duty to act promptly was laid upon defendant Colerick in the execution of said writ and perfecting the liens of the attachment, and you must find him negligent of his duty, unless you find that he did so act promptly and with dispatch in the execution of said writ and perfecting the liens of the attachment."

"7. It is the duty of the officer serving the writ of attachment to use reasonable diligence and effort to perfect the liens of attachment, when lands are seized by virtue of it, by depositing a certified copy of the writ with the register of deeds of the county, together with a description of the lands levied upon and seized, and, in case the officer fails or neglects so to do with reasonable diligence and effort, he is guilty of negligence.

"8. Failure to deposit the certified copy of the writ of attachment, together with a description of the lands seiz d and levied upon by virtue of it, in the case of *Thomas Springett v. William Merritt and Frederick V. Balch*, to perfect the lien upon the lands, from one o'clock in the morning until eleven o'clock in the forenoon of the same day, would in itself be neglect of duty in an officer who had such writ in his hands for service, unless by the use of due diligence and reasonable effort he could not sooner make and deposit such copy.

"9. Due diligence and reasonable effort required of an officer under such circumstances are such diligence and effort as men ordinarily would exercise in their own business to protect their rights and interests; and if defendant Colerick did not in the service of said writ exercise such diligence and effort, then he is guilty of negligence, and the burden of excusing himself in the matter is placed upon defendants."

"11. If you find that the defendant Colerick failed and neglected to use due diligence and reasonable effort in perfecting and preserving the lien of the writ of attachment, under which he levied upon and seized the lands of said Merritt & Balch, by depositing a certified copy of the writ with the register of deeds, together with a description of the lands levied upon, then such failure and neglect would be such default as would render him and his bondsmen liable, provided you find that the defendants in said writ had before the depositing of said writ with the register of deeds mortgaged

or conveyed the lands so seized, at such a time as when by the use of due diligence and reasonable effort the said defendant Colerick should have perfected the said lien, and that thereby the plaintiff has lost the fruits and benefit of such writ and seizure.

"12. If you find that defendant Colerick was negligent, and did not use due diligence and reasonable effort in perfecting the said lien, and that the plaintiff, Springett, was damaged thereby, then plaintiff is entitled to recover, and the measure of damages is *prima facie* the amount of his judgment and costs, with interest thereon from the date of the judgment.

"13. Under the proofs in this case, you will find that the defendant Colerick was negligent, and did not use due diligence and reasonable effort to perfect the lien of the attachment; and unless he legally excuses such default, you must find for the plaintiff.

"14. If you find that the plaintiff in the said attachment suit placed the writ of attachment in defendant Colerick's hands for service at one o'clock in the morning, that fact in itself would be sufficient to apprise the sheriff of the necessity of prompt action on his part, and would impose upon him the duty of prompt action in levying and in perfecting the lien, by filing such certified copy of said writ of attachment with the register of deeds, together with a description of the lands levied upon, as soon as the said register's office was open for business, and the failure so to do under such circumstances would be negligence, and such default as would render the defendants liable, unless you find that such neglect is legally excused.

"15. An officer must be presumed to know the law, and ignorance of the law is no excuse; and if you find that, through ignorance of the law, Colerick failed and neglected to file the certified copy of the writ of attachment and perfect the lien, and plaintiff has lost the benefit and fruits of said writ, then your verdict must be for plaintiff."

Some things said in these requests were contained in the judge's charge, but not in such connection as would be likely to impress the jury with the law governing the case. The requests were all warranted by the facts, and it was error not to give them as requested.

I think undue prominence was given to some portions of defendant Colerick's testimony in the charge, which did not

of course occur to the learned circuit judge at the time. This, however, is a very mischievous error, and not unfrequently greatly prejudices the rights of parties. Such, I have no doubt, has been the experience of very many practitioners at the circuit, and should always be avoided as much as possible in the charge.

For the errors noted, I think this judgment should be reversed, and a new trial granted.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.