ELISHA A. FRASER AND JASPER C. GATES V. ELIZABETH HAGGERTY.

| 86 | 521 |
|----|-----|
| 112 | 551 |
| 86 | 521 |
| 126 | 97 |
| 86 | 521 |
| 142 | ³627 |
| 86 | 521 |
| 156 | 32 |

*Attorney and client—Professional services—Evidence—Charge to jury—Credibility of witness.*

1. In a suit to recover for legal services rendered under an agreement made with the defendant's solicitor by her authority, as the solicitor testified, and which defendant denied giving, it is competent to introduce in evidence, as a part of the cross-examination of the solicitor, his agreement with the defendant, made the same day that he claimed to have received authority to employ the plaintiffs, to conduct to a successful issue, for a specified sum, the suits in which plaintiffs claimed to have rendered the services, as bearing upon the credibility of the witness.

2. Where, in a suit to recover for professional services, the plaintiffs relied either upon an express contract covering the *entire* services or upon an implied one of the same extent, and their testimony related to the value of the *entire* services, the charge of the court, following such theory and proofs, is not open to the objection that the trial judge did not, of his own motion, introduce a theory supported only by defendant's testimony, which was denied by plaintiffs, which, if suggested, might have entitled plaintiffs to a verdict of $30, whereas their claim was for nearly $1,900.

3. It is improper for the court to instruct the jury as to the weight they should give to particular testimony, or to the tes-

timony of a particular witness, or to place a particular witness in undue prominence by charging the jury to find according to their belief in his evidence, if such charge tends to ignore other testimony; citing *Chase v. Iron Works*, 55 Mich. 139; *Springett v. Colerick*, 67 Id. 362; nor has the trial judge a right so to instruct the jury as manifestly to reflect upon a particular witness; citing *Railroad Co. v. Martin*, 41 Mich. 667, 672; *Wheeler v. Wallace*, 53 Id. 355.

4. An instruction that, if the jury find that any witness has testified falsely as to any material fact in the case, they are at liberty to reject and disbelieve all of his testimony, clearly and sufficiently states the law upon the subject, and it is not error for the court to refuse to give a request applying such rule to a particular witness, and challenging the attention of the jury to particular portions of his testimony, which the request assumes as false.

Error to Wayne. (Hosmer, J.)   Argued May 5 and 6, 1891.   Decided July 28, 1891.

*Assumpsit.*   Plaintiffs bring error.   Affirmed.   The facts are stated in the opinion.

*Fraser & Gates, in pro. per.*, for appellants, contended:

1. The mere acceptance by the defendant of plaintiffs' services rendered her liable.  Col. Larned's agency, his making of the agreement, and defendant's acceptance of its benefits are all undisputed, and make her liable; and neither the agent's want of authority nor defendant's ignorance of the agreement is any defense.  If she retains the benefits of the agreement, she subjects herself to its burdens also, and she cannot ratify so much as is beneficial, and repudiate all that is onerous; citing *Hudspeth v. Yetzer*, 78 Iowa, 11; *Brigham v. Foster*, 7 Allen, 419; *Hogate v. Edwards*, 65 Ind. 372; *Barber v. Britton*, 26 Vt. 112; *Mundorff v. Wickersham*, 63 Penn. St. 87; *Railway Co. v. Elliott*, 76 Ill. 67; *Scott v. Railroad Co.*, 86 N. Y. 201; *Bacon v. Johnson*, 56 Mich. 182; *Nichols v. Shaffer*, 63 Id. 599.

*Henry M. Cheever*, of counsel, for appellants, contended:

1. An acceptance of beneficial services raises an implied *assumpsit;* citing *Hosmer v. Wilson*, 7 Mich. 294; *Donovan v. Engine Co.*, 58 Id. 38; *Manderson's Appeal*, 113 Penn. St. 631.

2. As bearing directly upon the question of the employment of an

associate by an attorney, see *Price v. Hay*, 132 Ill. 543; *Eggleston v. Boardman*, 37 Mich. 20.

3. Plaintiffs were entitled to have their sixth request (see opinion) in its details submitted to the jury; citing *Mynning v. Railroad Co.*, 59 Mich. 259; *Cook v. Brown*, 62 Id. 477; *People v. Stewart*, 75 Id. 29; *People v. Macard*, 73 Id. 20, 21; *Babbitt v. Bumpus*, Id. 341; *Parrish v. Bradley*, Id. 620.

4. The record in this case settles a basis of fact, and covers the whole case, so that this Court has the absolute means for entering a judgment, within the ruling in *Carmichael v. Benefit Association*, 51 Mich. 494; *Wiley v. Lovely*, 46 Id. 83; and see, also, *Lindner v. Hine*, 84 Id. 511; *Tubbs v. Insurance Co.*, Id. 646.

*Peter E. Park* (*Edwin Henderson*, of counsel), for · defendant.

McGRATH, J. Plaintiffs, as copartners, sued defendant in *assumpsit* for legal services alleged to have been performed by Mr. Gates for defendant.· The jury found for defendant, and plaintiffs appeal.

Defendant was a party to two suits' pending on the chancery side of the Wayne circuit court, in which Sylvester Larned was her solicitor of · record. Mr. Gates claimed that defendant came to his office, November 26, 1886, and told him that she had a suit coming on in the circuit court, in which Col. Larned was her solicitor, and that he was out of the city; that she offered him $30 to assist Col. Larned to the end of that case; that he refused, but consented to appear in Col. Larned's absence; that he went into court on that day, and raised some objections, the argument upon which occupied most of the afternoon; that the objections were sustained, and the hearing adjourned to December 10; that Col. Larned came into court during the argument; that, on that day, defendant said that she wanted him to continue in the . case; that afterwards, and on December 17, a dispute arose, she insisting that his agreement was to assist Col. Larned for $30, and he denying that agreement; that he

then retired from the case, and did not appear in court in the afternoon; that on that evening Col. Larned telephoned him, asking him to meet Larned at the courtroom the next morning; that he was there, and Col. Larned told him that defendant had authorized him (Larned) to employ plaintiffs at the rate of $15 per day, the previous services of Mr. Gates to be paid for at what they were worth; that he was consulted from time to time by her, and that she was present from time to time in court, when he was engaged at the various hearings; that he did a large amount of labor in that case, and performed other services in the other suit and in other matters under the same arrangement; that, in all, he had performed 69 days of service in one case, and that his charges in that case, according to the agreement, amounted to $1,476.90; and that the amount of his bill in the other case was $363.60.

Col. Larned was called as a witness for plaintiffs, and testified that he was defendant's solicitor of record in both cases, and that on December 17 defendant authorized him to employ Mr. Gates, as counsel, at $15 per day for all the work which Gates had done, as well as all that he was to do. Other witnesses were called for plaintiffs as to the value of their services, and as to the presence of Mr. Gates in the cases in question, and as to defendant's presence also.

Defendant denies absolutely and unequivocally the employment of plaintiff, or that she ever authorized Col. Larned to employ him, or that she had ever consulted with Gates, or authorized him to do any work, except that, in the absence of Col. Larned from the city, she called upon Gates, and asked him to act for her in Col. Larned's absence, and agreed to pay him $30 for so doing; that this was the first time she saw Gates; that after Larned's return she noticed Gates in court, and told him that

their engagement was at an end, and that if he did any further work in the case she would not pay him for it; that she offered to pay him $30, and he declined to receive it, saying that he had done what he had out of courtesy to Col. Larned, in his absence; that afterwards she saw Gates in court, and protested to Larned about Gates' presence, and Larned said to her that, inasmuch as she did not have to pay Gates, she ought not to object; that she had employed Col. Larned to do the work in those cases, and to do all the work in them.

The case went to the jury upon this testimony, and the jury found for defendant.

The first four assignments of error relate to the cross-examination of Mr. Larned respecting his employment by defendant; the execution of a written agreement between the witness and defendant at the time of his employment, and a second written agreement on December 17; and he was asked to identify these agreements and certain receipts and notes, which he did. It is insisted that these agreements did not bind plaintiffs. But, as bearing upon the weight and credibility to be given to the testimony of the witness, it was important to show just what the relations between the witness and defendant were, and whether or not the witness had not himself agreed to do the work in these cases. Defendant's counsel stated that he proposed to show that the witness had by these papers agreed to conduct the cases to a successful issue. The court excluded the instruments, and this is the only error which we can discover in this part of the record. It was certainly proper to show that on December 17, the very day alluded to by both Larned and Gates as that upon which Larned had been authorized to employ Gates, the former had made an agreement with defendant such as was claimed. Especially is this true, in view of defendant's claim that Larned had afterwards assured her that

the presence of Gates was due to his employment, not hers.

The next five assignments of error relate to the admission of defendant's testimony as to conversations with Larned, and his agreement to try one of the cases for $50. On his cross-examination, Mr. Larned had been asked regarding these conversations, and had denied them.

Referring again to the contract between Col. Larned and defendant, counsel for defendant made the following statement:

"I offer this contract in evidence for the purpose of showing that in this paper Col. Larned agreed to conduct this case to a successful issue."

The court excluded it. Again counsel for defendant said:

"I now offer it in evidence for the purpose of contradicting the statement made by Col. Larned."

It was again excluded. Counsel for defendant then asked Col. Larned:

"Mr. Gates did the work in the Campbell-Strong case that you had agreed to do, and received pay for it, didn't he?"

The question was objected to, and excluded. Error is assigned upon these offers and question.

Defendant's claim was that she had employed Col. Larnard to do all the work necessary to be done in the conduct of this litigation; that, if plaintiffs were employed by Larned, it was to do that which she had employed Larned to do, and he, not she, had agreed to pay for it. Plaintiffs in their bill of particulars included items for "drafting lis pendens;" drafting receipts for costs; drafting subpœnas; securing signature of judge to decrees; drafting notice of settlement of decrees; preparing bills of costs; drafting order *pro confesso;* copying papers; serving papers; attending court 12 times when cause was

not reached; and attending taxation of costs,—aggregating $335.50. These items are within the scope of the solicitor's duty in the conduct of a cause, and are not ordinarily classed as duties of counsel. Plaintiffs sought to show that in their employment Larned acted as agent for defendant. Under such circumstances courts will ordinarily allow to a cross-examination a wide range. The offers and question were entirely proper, and the error was in their exclusion. All these circumstances bore upon the question of the credibility of the witness.

The other assignments of error relate to the court's instructions to the jury. The plaintiffs tried the case upon two theories:

1. An express contract at the rate of $15 per day.
2. An implied contract, growing out of the performance of the services by plaintiffs, the defendant's knowledge of Gates' presence in court, her consultations with him, and the receipt by her of the benefits of the work done.

The jury were instructed substantially as requested by plaintiffs on both theories, except, however, that the court instructed the jury that if defendant did not employ plaintiffs, and did not authorize Col. Larned to employ them, there could be no recovery upon any implied contract, if they found that defendant told Mr. Gates that she would not pay for any services which plaintiffs might render; that, if defendant "told Mr. Gates distinctly that she would not pay, the law would not imply from the acceptance of the services after that a promise to pay for them." There was no error in this instruction.

It is insisted upon the argument here that defendant did not claim to have notified Mr. Gates until December 17 that she would not pay for any further services, and that at that time plaintiffs had performed services amounting to about $250. But no testimony was offered as to

the value of these particular services. Mr. Gates testified that, up to and including December 17, he worked for defendant in court and office about 12 days.

"Twice during that time she came to our office. Once she brought in some witnesses for me to examine, and once I prepared a subpœna and 11 copies at her request. Our charges against her in this case during this time amounted to about $250."

No severance was made upon the trial, and no separate request submitted by plaintiffs in relation to these services. Mr. Gates testified that defendant first asked him simply to act in the absence of Mr. Larned, but denies that he agreed to do this for the sum of $30. He claims, however, that, after Mr. Larned's return, defendant asked him to stay in the case, and assist Col. Larned. This, however, defendant denies, and insists that the original agreement covered the services performed up to that date. Her testimony upon this point is as follows:

"I says, 'Mr. Gates, you were not to work in this case. I agreed to give you $30 to watch this case, in case it was left alone, as it was the first day, and, if so, have it adjourned, and notify me, that I could take care of my case.' I says, 'you were not to work in this case.' He said he knew that; and I says, 'Col. Larned was to try this case for $50;' and Col. Larned said he knew that, but he said there was going to be too much work in it, and he would not try it; and so I says to them, I says to Col. Larned, turning round, 'I will give you $15 a day for three days, $45, in addition to the $50 that I agreed to give you to try this case,—$95 in all.' And I says to Mr. Gates, 'I was to give you $30 to watch the case. I will give you $10 a day for 3 days in addition, —$60 in all.' And Mr. Gates says, 'I have quit the case,' and left the court-room.

"My sons, John and Floyd, and Mr. Henry and myself then went to Mr. Gates' office, and I asked Mr. Gates for the papers that Charles Larned and I had brought over there on November 26, and he handed them to me. Says I, 'There was another among them when he brought them here,—a mortgage.' He took it out of his desk

and handed it to me. Says I, 'Has there been anything done on this mortgage?' He says, 'I have not looked at it.' Says I, 'Do I owe you anything on it?' He says, 'Nothing at all.' 'Now,' says I, 'Mr. Gates, how am I going to pay you that $30 that I agreed to pay you for watching this case through in case it was left alone, to have it adjourned and notify me?' Says he, 'You don't owe me anything. What I have done so far in this case is a matter of courtesy to Col. Larned; a duty one lawyer owes to another.' And then says I, 'You say I don't owe you anything?' Says he, 'Yes, that is all right.'"

The testimony which plaintiffs introduced regarding the value of the services related to the entire services, and no proof was offered in relation to the particular services rendered prior to December 17, except Gates' testimony that "our charges amounted to about $250." There was no testimony upon which the jury could have based a verdict for these particular services.

Plaintiffs relied upon the theory of an express contract covering their entire services, or an implied contract of the same extent. They made no separate claim as to services performed before December 17, and made no sufficient proof as to these specific services; nor did they ask for any instruction relative to them, although a number of requests were submitted on behalf of plaintiffs. It is true that defendant claimed that she agreed to pay $30, but this agreement plaintiffs repudiated, and defendant testified that she offered to pay that amount, but that Mr. Gates informed her that what he had done up to that time was done out of courtesy to Col. Larned, and that he had made no charge therefor.

The court's charge followed the lines suggested by plaintiffs, and upon which their proofs were made, and is not open to the objection, made here for the first time, that the trial judge did not, of his own motion,

introduce a theory supported only by defendant's testimony, which was denied by plaintiffs, which, if suggested, might have entitled them to a verdict of $30, whereas the claim was made for nearly $1,900; especially in view of the disclaimer testified to by defendant, as to the effect of which no instructions were asked. *Rankin v. West*, 25 Mich. 195; *White v. Campbell*, Id. 463, 474; *Advertiser & Tribune Co. v. Detroit*, 43 Id. 116.

As was said in *White v. Campbell*, under the circumstances of this case,—

" Whatever might have been proper for the court below to have done on a motion for a new trial, there appears to be no ground upon which this Court, as one of review, and in the state of this record, can reverse the judgment in consequence of the want of an instruction adapted to that theory of the evidence for which plaintiff in error now contends, and in accordance with which no instruction was asked."

Plaintiffs' counsel requested the court to instruct the jury as follows:

"6. If you believe that Mrs. Haggerty has testified falsely in any of the following material particulars:

"*a*—That she did not consult with Mr. Gates in a single instance during the hearing of the cases in court;

"*b*—As to her belief of the contents of the amended bill in the Miloch case not being solely based upon the ground of a mistake in the discharge of the mortgage, but that it was to get Stellwagen out of the case;

"*c*—As to the conversation she claims to have had, on the hearing before Judge Look, with Larned;

"*d*—As to her belief that the $30 would be full compensation for Mr. Gates' services if the case lasted 30 years;

"*e*—As to the testimony of any other material points,—

" Then you are at liberty to reject her testimony entirely.

"7. If any witness or party has willfully testified falsely on this trial as to any material fact in the case, you are at liberty to reject and disbelieve all the testimony of any such witness."

The court upon this point instructed the jury as follows:

"I am asked to charge you, with reference to that, that if Mrs. Haggerty testified falsely in any material particular,—and there are several particulars named,—you are at liberty to reject her testimony entirely. That is so, gentlemen of the jury. If a witness has testified falsely in any particular, of course you may reject the testimony entirely. That applies not only to Mrs. Haggerty, but to any other witness that has been sworn in this case, either on the part of the plaintiffs or on the part of the defendant; but, inasmuch as I do not care to comment upon the testimony at large, I do not think I will call your attention to the specific instances that the counsel have requested. If a witness or a party has testified falsely on this trial as to any material fact in the case, you are at liberty to reject and disbelieve all the testimony of such witness."

The instruction given clearly and sufficiently stated the law upon the subject.

Appellants say in their brief:

"The general application of the rule, together with the omission of the details in which it was claimed Mrs. Haggerty had falsified, entirely destroyed the force of the proposition embodied in this request. There was no pretense on either side that appellants' witnesses had testified falsely. It was claimed that Mrs. Haggerty had, and the particulars of such perjury were defined."

The weight of evidence is a question for the jury. It is not determined by a count of the witnesses. It is improper for the court to instruct the jury as to the weight they should give to particular testimony, or to the testimony of a particular witness, or to put a particular witness into undue prominence by charging the jury to find according to their belief in his evidence, if such charge tends to ignore other testimony. *Springett v. Colerick*, 67 Mich. 362; *Chase v. Iron Works*, 55 Id. 139. On the other hand, a trial judge has no right so to instruct the jury as manifestly to reflect upon a par-

ticular witness. *Wheeler v. Wallace,* 53 Mich.. 355; *G. R. & I. R. R. Co. v. Martin,* .1 Id. 667, 672.

The correct rule of law was laid down by the court, and there was no error in the statement that it was of general application.

There is no error in the record, and the judgment must be affirmed, with costs.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred with McGRATH, J.

LONG, J. *(dissenting.)* I am unable to agree with my Brother McGRATH in the conclusion reached by him affirming this case.

Plaintiffs' testimony shows that prior to December 17, 1886, Mr. Gates spent about 12 days' time in the examination of defendant's case then on trial in the Wayne circuit court, and in the trial of the case, before any controversy arose between him and the defendant in reference to his charges; and he testifies that his charges for that time amounted to about $250.

It is shown upon the part of the plaintiffs that Mr. Gates, who is a practicing attorney of some 15 years active practice, was called upon, on November 26, 1886, by the defendant to engage him to attend to the case for her, then on call in the Wayne circuit court, for the reason that her attorney was absent. At that time defendant claims that she stated to him that there were nearly fifty parties defendant in the case. Mr. Gates went into court on that day, and raised a considerable number of objections to the proceedings, when the hearing went over until December 10.

Mr. Gates claims that, when defendant engaged him, he refused her offer of $30 to take charge of it and carry it through, as he knew but little of the case, but that she was in the office twice prior to December 17, con-

sulting him in reference to it, and that upon these occasions he stated to her that he was doing a considerable amount of work for her, and it was his custom to be paid something in advance; that the first time she promised him something in a few days, and finally said that she was responsible, and would pay when the case was finished. Upon December 17, defendant met Mr. Gates in the court-room, and she stated to him that he had agreed to go through with the case for $30. He denied this, and told her that what he had already done was worth many times that sum. She then offered him $15 a day for his services from that time, but insisted that he had agreed upon $30 with her for prior services. Mr. Gates then told her that he would have nothing more to do with the case, and left her. The evening following he received a telephone message from defendant's counsel to meet him next morning in the court-room. He went into court the next morning, and was there told by Col. Larned, defendant's counsel, that he had been authorized to employ him at $15 a day, and his previous services to be paid for at what they were worth. Upon this understanding Mr. Gates proceeded in the case.

The work performed by Mr. Gates thereafter is set out very fully in the charge of the court to the jury, from which it appears that a bill of complaint was filed for the partition of the estate of George Campbell, deceased, in which many legal questions and complications arose, and over 2,000 pages of testimony were taken in the case. Subsequent to that, another case arose in which the defendant was a party, and Mr. Gates took a leading part in that as counsel for her, the testimony covering a great number of pages. These matters were fully gone over and explained by Mr. Gates in his testimony before the court and jury, and the court in its general charge

dwelt at great length upon these services. A great number of witnesses were called by the plaintiffs, who testified that the services performed by Mr. Gates were worth all that was charged for them, and some considerable testimony was given tending to show that he performed the services for which the charges were made.

The defendant's contention was that she never employed the plaintiffs, except to go into court in the first instance, and represent her in the absence of Col. Larned, her counsel, and that she never authorized Col. Larned to employ them. The defendant testified as follows:

"I never employed Mr. Gates to do any work. He was simply to watch the case during the entire time it was in progress, until it was through, from the fact that Col. Larned was absent at that time, and might possibly be again. That was the only reason. I did not expect him to advise with Col. Larned, nor to examine witnesses, nor to make an argument. I employed him to watch, so that if Col. Larned was absent, and it was called up, Mr. Gates would get it adjourned and notify me."

She testified, further, that these cases extended over a period of nearly three years, and that during all that time she saw Mr. Gates in court, taking part in the trial, but testified positively that after the 17th day of December, 1886, she never spoke to him on the subject of her case. It appears that the testimony in the case was taken before a circuit court commissioner, and on the hearing before the court was read largely by Mr. Gates in her behalf, and argued at great length by him. This is testified to by the witnesses, including the defendant herself. The defendant was asked if Mr. Gates did not appear on one occasion before Judge Look, and make an argument. This she denied positively; and Judge Look, being called by the plaintiffs, contradicted her, stating that Mr. Gates was present, and made the argument before him.

I think the court was in error in directing the jury that the plaintiffs could not recover if the jury found that Mrs. Haggerty told Mr. Gates that she would not pay for any services that might be rendered in the case by him. This would entirely exclude any recovery by the plaintiffs for services rendered prior to December 17, 1886, and in this the court was in error. There was no claim that the agreement had not been made to pay for services rendered prior to that date. The only contention was the amount which had been agreed upon. It is true that the defendant testified that Mr. Gates told her he made no charge for that, as it was for services rendered to Col. Larned, but this is denied by Mr. Gates, his claim being that he refused to perform the services for $30, and refused to take $60, which she proposed to pay, and insisted that he had spent some 12 days in her services up to that date, and which were charged for in the bill of particulars at $15 a day.

It is a little difficult to understand how the jury, in the face of all this testimony, were able to arrive at the conclusion that the defendant was not indebted to the plaintiffs in any sum, unless they took it from the charge of the court that the plaintiffs could not recover any sum whatever if they found that Mrs. Haggerty told Mr. Gates she would not pay for services rendered by him after December 17, 1886.

For this reason the verdict and judgment should be set aside, and a new trial ordered.