### VALENTINO v OAKLAND COUNTY SHERIFF

### VALENTINO v OAKLAND COUNTY TREASURER

Docket Nos. 74691, 75239. Argued November 12, 1985 (Calendar Nos. 9, 10).—Decided January 21, 1986. Rehearings denied *post,* 1206.

Paul G. Valentino, Jr., and others brought an action in the Oakland Circuit Court against the Oakland County Sheriff, seeking damages for the alleged misfeasance and malfeasance of the sheriff in failing to seize certain property pursuant to a writ of execution and for the alleged misfeasance of the county as the sheriff's employer. The writ was issued after default judgments had been entered in favor of the plaintiffs against the owner of the property, several efforts to enforce the judgments had been made, and a bench warrant for the arrest of the judgment debtor was issued for failure to appear at a creditor's examination. The warrant was executed after the judgment debtor had been admitted to a hospital, and a twenty-four hour guard was placed at his room. Items ordered seized by the writ were allegedly located in the room. Subsequently, an undersheriff directed removal of the guard before the writ was executed, and the sheriff permitted the judgment debtor to leave. The judgment debtor eventually left the state.

The court, James S. Thorburn, J., dismissed the claims, finding that the plaintiffs had failed to establish that the judgment debtor actually possessed the property sought and had failed to prove its value, and that the constitution prohibited liability of a county for a sheriff's acts. The Court of Appeals, M. J. Kelly, P.J., and Bronson and Daniels, JJ., in

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Sheriffs, Police, and Constables § 70.

Immunity of public officer from liability for injuries caused by negligently released individual. 5 ALR4th 773.

Personal liability of policeman, sheriff, or similar peace officer or his bond, for injury suffered as result of failure to enforce law or arrest lawbreaker. 41 ALR3d 700.

[3] Am Jur 2d, Sheriffs, Police, and Constables § 189.

See the annotations in the ALR3d/4th Quick Index under Judicial and Execution Sales.

an unpublished opinion per curiam, affirmed the dismissal of the claim against the county, but reversed relative to the sheriff and remanded the case for trial of the issue whether the sheriff was negligent in failing to restore a guard to the hospital room.

On remand, the court found that the undersheriff was negligent and that the sheriff was vicariously liable. After remand, the Court of Appeals, MACKENZIE, P.J., and WAHLS and WARSHAWSKY, JJ., affirmed, holding that the sheriff was directly liable for the failure to restore the guard and that the sheriff had the burden of proving the nonexistence of the property subject to the writ and of establishing that the plaintiffs had failed to mitigate damages (Docket No. 63737). The sheriff appeals.

The plaintiffs also brought an action in the Oakland Circuit Court against the County Treasurer and other county agents, seeking mandamus to compel payment of the amount of the sheriff's liability determined on remand by the circuit court in the previous case on the basis of MCL 600.6093; MSA 27A.6093. The court, James S. Thorburn, J., granted summary judgment for the defendants. The Court of Appeals, R. B. BURNS and EVERETT, JJ. (HOOD, P.J., dissenting), affirmed in an opinion per curiam (Docket No. 74976). The plaintiffs appeal.

In an opinion by Justice RILEY, joined by Chief Justice WILLIAMS and Justices LEVIN, BRICKLEY, CAVANAGH, and BOYLE, the Supreme Court *held:*

The Court of Appeals correctly held that the sheriff was directly liable for the failure to restore the guard at the judgment debtor's hospital room and thus allowing the judgment debtor to leave before a search of the room was conducted. The Court incorrectly placed the burden of proving the nonexistence of the property subject to levy on the sheriff, however, requiring reversal, and reinstatement of the trial court's dismissal of the plaintiffs' complaint.

1. A sheriff is liable to a judgment creditor for damages sustained if he permits a party incarcerated on civil process to leave confinement before discharge according to law. In this case the facts demonstrate that the sheriff was directly responsible for allowing the departure from confinement of the judgment debtor before being ordered to do so by the trial court. The placing of the guard at the hospital room pursuant to the bench warrant and court order was the equivalent of jailing the judgment debtor. But for his medical problems, the judgment debtor would have been in jail for failure to appear at the

discovery hearing. Thus, the sheriff was directly liable for allowing him to leave custody before his room was searched.

2. The threshold issue whether the property ordered seized by the writ was located in the judgment debtor's hospital room was never established. The sheriff is not required to prove the nonexistence of property which the plaintiffs did not establish exists. No evidence was offered indicating the amount or value of any property in the hospital room. Throughout the proceedings, the existence of the property has remained unsubstantiated.

3. The decision in *Valentino v Oakland Co Sheriff* renders decision of the issue of which party bears the burden of proving mitigation of damages and decision in *Valentino v Oakland Co Treasurer* unnecessary.

Affirmed in part and reversed in part.

Justice ARCHER took no part in the decision of this case.

134 Mich App 197; 351 NW2d 271 (1984) affirmed in part and reversed in part.

1. SHERIFFS AND CONSTABLES — CIVIL PRISONERS — JUDGMENT CREDITORS — LIABILITY FOR ESCAPE.

A sheriff is liable to a judgment creditor for damages sustained for permitting a person incarcerated on civil process to leave confinement before discharge according to law (MCL 600.1735, 600.6083; MSA 27A.1735, 27A.6083).

2. SHERIFFS AND CONSTABLES — CIVIL PRISONERS — CONFINEMENT IN HOSPITAL — JUDGMENT CREDITORS — EXECUTION — LIABILITY FOR ESCAPE.

A sheriff who, following removal by an undersheriff of a twenty-four hour guard at the hospital room of a judgment debtor who had been arrested in his room pursuant to a bench warrant for failure to attend a creditor's examination, failed to restore the guard, and who subsequently permitted the debtor to leave the hospital before levying a writ of execution for property allegedly within the room, was liable to the judgment creditor for damages sustained (MCL 600.1735, 600.6083; MSA 27A.1735, 27A.6083).

3. SHERIFFS AND CONSTABLES — EXECUTION — PROPERTY SUBJECT TO WRIT — BURDEN OF PROOF.

A sheriff sued by a judgment creditor for damages resulting from a failure to levy a writ of execution was not required to establish the nonexistence of the property subject to the writ where the writ was issued following entry of a default judgment and the plaintiffs offered no evidence establishing the amount or value of the property.

*Fred L. Harris, P.C.* (by *Fred L. Harris*), for the plaintiffs.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *William P. Hampton* and *Lanie Anderson*) for defendant Oakland County Sheriff.

*Jack C. Hays,* Corporation Counsel, for defendants Oakland County agents.

RILEY, J. *Valentino v Oakland Co Sheriff,* 134 Mich App 197; 351 NW2d 271 (1984), is an appeal from a Court of Appeals decision affirming an Oakland Circuit Court judgment awarding damages to the plaintiffs for the defendant sheriff's failure to seize property pursuant to a writ of execution.

*Valentino v Dohany,* 138 Mich App 94; 359 NW2d 263 (1984), is an appeal from a Court of Appeals decision affirming an Oakland Circuit Court denial of a writ of mandamus pursuant to MCL 600.6093(3); MSA 27A.6093(3), to endorse payment of a judgment entered in *Valentino v Oakland Co Sheriff, supra.*

I

FACTS

On September 27, 1974, and November 24, 1974, default judgments were entered in favor of the plaintiffs against Peter Lazaros and the Lazaros trust. These judgments totaled $550,000 against Lazaros individually and $850,000 against the Lazaros trust. Several efforts to enforce the judgments followed and, after Lazaros failed to appear for a creditor's examination, a bench warrant for his arrest was ordered on February 19, 1976. On March 26, 1976, plaintiffs filed a petition for writ

of superintending control directing the defendant sheriff to execute the bench warrant. Lazaros was admitted to a local hospital on April 18, 1976, and three days later was taken into custody, pursuant to the bench warrant, by placing a rotating sheriff's guard at his hospital room. A hearing was scheduled for May 10, 1976, on the sheriff's motion to release himself from the obligation of bringing Lazaros before the court until a determination was made that Lazaros was physically able to appear. A writ of execution against Lazaros' property and the Lazaros trust was issued and delivered to the Oakland County Sheriff's Office on May 3, 1976. The writ ordered seizure of certain items of jewelry allegedly held in Lazaros' hospital room and a 1972 Cadillac.[1]

On May 6, 1976, the undersheriff directed the removal of the hospital room guard pursuant to a letter to the circuit court judge from the Oakland County Prosecuting Attorney.[2] Execution was not made on any of the alleged items of jewelry in the hospital room before the guard was removed. On May 7, 1976, the sheriff was advised by the hospi-

[1] The 1972 Cadillac was later determined not to be registered to Peter Lazaros.

[2] The letter is set forth in *Valentino, supra,* 201, n 2.

" 'Dear Judge Thorburn:

" 'I have advised Undersheriff John Nichols that it is not necessary for him to maintain an around the clock security guard over Peter Lazaros while the latter is confined to the hospital. I am further advised that my instructions to Undersheriff Nichols represents your thinking in this matter.

" 'The removal of the guards is solely my responsibility. If there are any questions regarding this recent action, please do not hesitate to contact me personally.

" 'Very truly yours,

*/s/*
" 'L. Brooks Patterson
" 'Prosecuting Attorney' "

tal security director that Lazaros was leaving, and the sheriff directed the hospital to permit his departure. Lazaros did in fact leave the hospital on May 7, 1976, and apparently went to a hospital in Cleveland, Ohio.

On May 19, 1976, plaintiffs filed a complaint alleging misfeasance and malfeasance on the part of the sheriff and misfeasance on the part of the county as the sheriff's employer. Damages were sought in the full amount of the default judgments against Lazaros and the Lazaros trust in addition to punitive damages sought against the sheriff. Finding that the plaintiffs had failed to meet the burden of establishing that Lazaros actually possessed the property sought to be seized, or of proving its value, the trial court dismissed the plaintiffs' claim against the sheriff. Also, pursuant to the constitutional restriction against county liability for a sheriff's acts, the claim against Oakland County was dismissed.[3]

On appeal, the Court of Appeals affirmed dismissal of the claim against the county, but reversed the dismissal of the claim against the sheriff. *Valentino v Oakland Co,* unpublished opinion per curiam, decided August 12, 1981 (Docket No. 52781). The Court of Appeals held that once a plaintiff establishes that a sheriff failed to levy a writ of execution the plaintiff is entitled to recover the full amount of the final judgment, and the burden is on the sheriff to prove that his failure to levy was excused (*i.e.,* establish the nonexistence of the property sought to be levied upon.) Thus, the Court of Appeals remanded the case for trial on

[3] "The sheriff may be required by law to renew his security periodically and in default of giving such security, his office shall be vacant. The county shall never be responsible for his acts, except that the board of supervisors may protect him against claims by prisoners for unintentional injuries received while in custody. He shall not hold any other office except in civil defense." Const 1963, art 7, § 6.

the issue whether the sheriff was negligent in failing to restore the guard to the hospital room on May 7, 1976. This Court denied the defendant's interlocutory application for leave to appeal. 412 Mich 876 (1981).

At the March 15, 1982 trial on remand, on the basis of stipulations of counsel, the trial court found, inter alia, that the guard was removed from Lazaros' hospital room at the direction of the undersheriff who was acting pursuant to his authority as second in command to the sheriff, that the sheriff had no personal knowledge of the guard's removal on May 6, 1976, and that Lazaros' hospital room was not searched from the time he was under guard until he was released from the hospital. On the basis of the findings, the trial court held that the undersheriff was negligent in removing the guard from Lazaros' hospital room and that the sheriff was vicariously liable for the acts of his undersheriff. On March 22, 1982, the court issued a written opinion (supplementing its prior oral opinion) finding the sheriff negligent, through his undersheriff who acted in his place, for disregarding an order of the court in releasing Lazaros from custody and thus depriving the plaintiffs of the opportunity to determine if any assets were available to satisfy the plaintiffs' default judgments. Judgment against the sheriff was entered March 23, 1982, awarding plaintiffs $2,247,-000 including interest. Defendant filed a claim of appeal with the Court of Appeals on April 9, 1982.

On April 12, 1982, plaintiffs filed a postjudgment motion in the trial court to modify the court's findings of fact. Plaintiffs asked the court to delete its earlier finding that the sheriff had no prior knowledge of the guard's removal and sought a determination that the sheriff was negligent in

failing to execute the bench warrant and in failing to levy the writ of execution.

On November 10, 1982, following evidentiary hearings, the trial court entered written findings of fact and conclusions of law. The trial court found, inter alia, that the sheriff had personal knowledge on May 7, 1976, that Lazaros was intending to leave the hospital, that the sheriff failed to take Lazaros into custody as required by the February 19, 1976, bench warrant and the April 21, 1976, court order, that the sheriff's act of permitting Lazaros to leave the jurisdiction on May 7, 1976, was a wrongful and intentional act, even though it was made in reliance of advice of counsel, that while the sheriff did not have personal knowledge of the existence of the writ of execution on May 7, 1976, he had legal notice of the writ, and that the sheriff was vicariously liable for the negligence of his undersheriff in removing the guard on May 6, 1976. Final judgment was entered on December 2, 1982, affirming the March 23, 1982, judgment as modified.

In defendant's appeal after remand, the Court of Appeals affirmed the judgment of the trial court, holding, inter alia, that the sheriff was directly liable for his failure to restore the guard to Lazaros' hospital room on May 7, 1976, thus allowing Lazaros to leave before a search of his room was conducted, that the sheriff had the burden of proving the nonexistence of the property subject to the writ of execution, and that the burden of proof was on the sheriff to establish that the plaintiffs had failed to mitigate damages.

The sheriff thereafter filed an application for leave to appeal with this Court which we granted April 5, 1985.[4]

---

[4] "On order of the Court, the application for leave to appeal is considered, and it is granted.

## II

### ISSUES

We agree with the Court of Appeals affirmation of the trial court's conclusion that the sheriff was directly liable for his failure to restore the guard to Lazaros' hospital room on May 7, 1976, thus allowing Lazaros to depart before the room was searched. In affirming the trial court judgment, the Court of Appeals quoted the following language from the trial judge's opinion:

"The decision of the defendant, Johannes Spreen, not to restore the guards at the hospital room of Peter Lazaros was wrongful. The sheriff was under the direct orders of this court as evidenced by the bench warrant of February 19, 1976, and the ruling of April 21, 1976. Upon arresting any defendant on a bench warrant, it is the express duty of the sheriff to detain him in his custody until the court orders otherwise. MCL 600.1735; MSA 27A.1735.

\* \* \*

"Defendant was aware of his duty and of the outstanding orders. Defendant was the respondent in litigation to compel the performance of his duty. Defendant's decision not to restore the guards was made on the eve of an evidentiary hearing to determine whether Peter Lazaros could be safely moved and brought before the court. There is no justifiable reason why the defendant should have contemplated refusing to follow the orders of this court. Consequently, the defendant's decision not to re-arrest Peter Lazaros was without lawful excuse.

"It is further ordered that this case be argued and submitted to the Court together with the case of *Valentino v Dohany* (Docket No. 75239), one immediately following the other, at such future session of the Court as both cases are ready for submission."

\* \* \*

"Although defendant, Johannes Spreen did not have personal knowledge of the existence of the writ of execution until after the commencement of this present suit, he should have known and consequently must be charged with knowledge of the existence of that writ.

\* \* \*

"Since March 26, 1976, when the defendant was named as the respondent on plaintiffs' petition for writ of superintending control, he had notice that Peter Lazaros was subject to arrest on civil process. He was also on notice that the civil process issued for the failure of Peter Lazaros as a judgment debtor to appear for discovery. From March 26, 1976, through May 10, 1976, defendant was actively engaged, through counsel, in proceedings to determine his obligation with respect to that outstanding civil process. Given the nature of the outstanding process, defendant's active involvement in litigation to enforce that process and the length of time, defendant, Johannes Spreen, had a duty to check the records of the civil division for outstanding writs of execution. Having failed to make that obvious investigation he must be charged with knowledge that a writ had in fact been received by the office of the sheriff."

Thus, the Court of Appeals concluded:

The [trial] court did not err in holding that Sheriff Spreen should reasonably have foreseen that his failure to maintain Lazaros in custody, in disobedience of court orders, would likely result in Lazaros's leaving the jurisdiction of the court and hence, the inability to seize property pursuant to the writ of execution.

\* \* \*

We conclude that the trial court did not err in holding Sheriff Spreen directly liable for his fail-

ure to restore Lazaros to custody on May 7, 1976.[5] [*Valentino, supra,* 209-212.]

The Court of Appeals decision is in accord with Michigan law which provides for a sheriff's liability if he permits an incarcerated party to leave confinement before discharge according to law. MCL 600.1735, 600.6083; MSA 27A.1735, 27A.6083.[6] We agree that the facts in this case demonstrate that the sheriff was directly responsible for allowing Lazaros' departure from confinement on March 7, 1976, before the trial court so ordered.

This Court held in *Butcher v Lovitt,* 280 Mich 369, 372; 273 NW 734 (1937), that the confinement of a judgment debtor in a hospital for an emergency appendectomy after transfer from a county jail (where the judgment debtor was in custody under a writ of capias ad satisfaciendum) was the same as being imprisoned in jail as required by the statute in question, 1929 CL 14756 (now incor-

---

[5] The sheriff also argued that he could not be held vicariously liable for the acts of his undersheriff pursuant to MCL 51.70; MSA 5.863, which states in part:

"A sheriff shall not be responsible for the acts, defaults and misconduct in office of a deputy sheriff."

We find it unnecessary, as did the Court of Appeals, to decide the issue of vicarious liability because of this Court's determination that the sheriff was directly liable for his own wrongful acts.

[6] "Upon arresting any defendant, on a bench warrant, to answer for any alleged misconduct, the sheriff shall keep such person in his actual custody, and shall bring him personally before the court issuing the warrant, and shall keep and detain him in his custody, until such court orders otherwise, or until the defendant is entitled to be discharged on bond." MCL 600.1735; MSA 27A.1735.

"(1) All prisoners committed on civil process shall be actually confined in jail until discharged according to law; and if any sheriff or keeper of jail permits any prisoner to leave confinement before such time, such sheriff or keeper is liable to the judgment creditor for the damages sustained and shall be guilty of a misdemeanor.

"(2) But if the prisoner is returned to custody before commencement of an action based on the liability herein described, then such liability shall be null and void." MCL 600.6083; MSA 27A.6083.

porated into 1961 PA 236, § 6082, MCL 600.6082; MSA 27A.6082).[7] This Court believes that the rotating guard placed at Lazaros' hospital room, pursuant to the bench warrant entered on February 19, 1976, and the court order of April 21, 1976, is the equivalent of being jailed for the purposes of MCL 600.6083(1); MSA 27A.6083(1). But for Lazaros' medical problems, he would in fact have been in jail pursuant to the contempt order issued upon his failure to appear for the discovery hearing. Thus, we agree with the Court of Appeals determination that the sheriff was directly liable for allowing Lazaros to leave custody before the room was searched.

We disagree, however, with the Court of Appeals determination in the instant appeal that the defendant had the burden of proving the nonexistence of property subject to levy. In the initial appeal to the Court of Appeals, a different panel addressed this same issue and held:

"[A] plaintiff who shows that a sheriff has failed to levy a writ of execution has established a prima facie case and is entitled to recover the full amount of the prior final judgment. *Dunphy v People for Use of Whipple*, 25 Mich 9, 12 (1872); *People for Use of Springett v Colerick*, 67 Mich 362, 368-370; 34 NW 683 (1887). While the sheriff may excuse his failure to enforce a levy, primarily upon showing the property sought for execution does not exist, *Dunphy, supra*, he bears the burden

[7] "Whenever in any civil action, any person shall be committed to any jail in default of bail, or by virtue of an execution issued or proceeding founded on a judgment rendered in such suit, the plaintiff or defendant at whose instance such person shall be so imprisoned, shall pay, on demand, to the sheriff or the keeper of the common jail of the county, the expenses of the board and keeping of such person so imprisoned; and the said sheriff or keeper of said jail shall not be required to retain such person any longer in jail than such expenses of said board and keeping shall be paid in advance; nor shall any expenses constitute any charge against the county." 1929 CL 14756.

of proving such an excuse. *Coville v Bentley,* 76
Mich 248, 250; 42 NW 1116 (1889); *Beard v Clippert,* 63 Mich 716; 30 NW 323 (1886)." *Valentino v
Oakland Co, supra,* 208.

Citing this language, the Court of Appeals then
affirmed the previous panel's determination, holding that because the issue raised in the present
appeal was the same as the issue raised in the
previous appeal, the law of the case doctrine applied and the prior ruling was dispositive. While
the second Court of Appeals panel may have been
bound by the previous Court of Appeals decision
pursuant to the law of the case doctrine, we believe the first Court of Appeals panel applied case
law clearly distinguishable from the facts presented in this proceeding and thus was in error.[8]

In *Dunphy, supra,* a writ of execution was issued
upon a judgment obtained in a suit commenced by
attachment wherein the sheriff levied upon the
same lands within the county that had been subject to the attachment. However, the sheriff failed
to ever make a proper return of the execution.
This Court stated that

[w]here the sheriff fails to return an execution, the
debt is assumed to be lost, and the execution
creditor is prima facie entitled to recover of him
the full amount. But the sheriff is nevertheless
allowed to make the one excuse for not performing
his duty—that however faithfully he might have
endeavored to do so, the effort would have been

---

[8] Plaintiffs also argue that this Court is restricted in its determination of the issues on this appeal by the doctrine of the law of the case
pursuant to our previous denial of an interlocutory appeal by leave
on December 1, 1981. We conclude that the law of the case doctrine
does not apply in this instance. While leave to appeal was denied on
issues previously presented, denials of leave to appeal do not constitute rulings on their merits. *Frishett v State Farm Ins Co,* 378 Mich
733-734 (1966); *Tebo v Havlik,* 418 Mich 350, 379; 343 NW2d 181
(1984) (LEVIN, J., *dissenting*).

> ineffectual because the defendant had no property
> from which the money could be made. [25 Mich
> 12.]

The sheriff had argued that his effort would have been ineffectual because the judgment debtor had transferred the lands in question and thus there was no property from which the judgment could have been satisfied. In answer to the sheriff's argument, this Court stated that "[i]t would be absurd to say that the sheriff is excused by impracticability of collecting a debt when he has already obtained satisfaction of it." *Dunphy, supra,* 13. The case was subsequently decided in favor of the plaintiff and damages were assessed at the full amount of the execution with interest.

In *Springett, supra,* the Lapeer County Sheriff was given a writ of attachment on certain real estate. However, the sheriff delayed in his enforcement of the writ and consequently lost the opportunity to collect anything on the judgment. This Court approved a jury instruction that said, as in *Dunphy,* that " 'the measure of damages is prima facie the amount of his judgment and costs, with interest thereon from the date of the judgment.' " *Springett, supra,* 370.

In *Coville, supra,* a constable levied upon certain goods pursuant to a suit commenced by attachment, but later returned them against the protest and without the consent of the plaintiff. The officer testified that the goods levied upon were exempt, and thus it would have been of no benefit to the plaintiff to sell them under the execution because the sale would be void. This Court explained that "[t]he defense that there was no property to be found liable to seizure, of the judgment debtor named in the execution, is always open to the officer, whether idemnified [*sic*] or not, and is a

good excuse in an action for refusal or neglect to levy." *Coville, supra,* 250.

Finally, in *Beard, supra,* the Wayne County Sheriff was given a writ of attachment on certain goods and lands which clearly existed and were pointed out to him. The officer made no effort to levy upon the goods and later filed a return stating that he was unable to find any of the property. The plaintiffs then brought an action against the sheriff to recover damages on account of his neglect and failure to serve the writ. This Court ruled that the sheriff was obliged to levy the property in debt, and "[n]eglecting that, it was incumbent, when sued for failure so to do, to show, by satisfactory evidence, that the property upon which he was directed to levy, and for which he had received indemnity, was not the property of defendants in the writ of attachment, or of either of them." *Beard, supra,* 719.

In each of the aforementioned cases, the plaintiff's original suit was begun by attachment and the property upon which the sheriff failed to levy was specifically identified and proved to be in existence. Conversely, in this case, the writ of execution was not issued upon a judgment obtained in a suit commenced by attachment but, rather, following a default judgment entered in favor of the plaintiffs and against Peter Lazaros and the Lazaros trust. Moreover, there is no record evidence indicating the amount or value of property claimed to be in the hospital room of the judgment debtor. From the time the writ of execution was issued on May 3, 1976, and throughout the instant proceedings, the allegation of the existence of property in the hospital room of Lazaros has remained unsubstantiated. Further, a dollar value of the alleged property was never established. In fact, the only "evidence" of any property

rests solely on what the plaintiffs were "informed and believe."

This Court cannot agree, therefore, that the defendant sheriff must prove the nonexistence of property where the plaintiffs have yet to establish the existence of property. While the late nineteenth-century cases relied on by the Court of Appeals in *Valentino, supra, i.e., Dunphy, Springett, Coville* and *Beard,* are cited for the principle that the measure of damages is the full amount of a plaintiff's judgment where the sheriff fails to enforce a levy, this Court is not persuaded that this accurately characterizes the holding in any of these cases. Additionally, and more importantly, the cited cases addressed circumstances where the existence of the property that was not levied upon was known and the value of the property was known or ascertainable. Thus, we do not believe that those cases are dispositive of the issue raised in this case because the threshold issue of the existence of property in Lazaros' hospital room was never established.

Finally, in light of our disposition of the foregoing issues, this Court need not address the issue of which party bears the burden of proving mitigation of damages.

## III

### CONCLUSION

We therefore affirm the Court of Appeals holding of the sheriff's direct liability for failure to restore the guard to Lazaros' hospital room on May 7, 1976, thus allowing Lazaros to leave before a search of the room was conducted. However, we reverse the Court of Appeals decision placing the burden of proof on the sheriff to prove the nonexistence of property subject to levy. We reinstate,

therefore, the trial court order entered July 7, 1980, dismissing plaintiffs' complaint.

Our decision in this case renders it unnecessary for us to decide the issues raised in *Valentino v Oakland Co Treasurer.*

No costs, a public question being involved.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RILEY, J.

ARCHER, J., took no part in the decision of this case.