| 52 | 545 |
| 63 | 318 |
| 52 | 545 |
| 67 | 94 |

FREDERICK N. CHADWICK v. WILLIAM E. CHADWICK, ADMINISTRATOR.

*Claim against estate—testimony as to dealings—jury.*

1. In prosecuting a claim against an estate for moneys lent to the decedent by claimant, but not in connection with his business, general testimony from his book-keeper that he, the book-keeper, found no such item debited on the cash account, would be irrelevant and could not be admitted in defense to the claim, especially if it did not appear that he would know what amounts were received by his employer ; it would also be improper to show by him or others that he or they had been present when claimant and decedent had talked about other claims, and had never heard this one mentioned. Nor would the decedent's widow be allowed to testify that she did not know of her husband's borrowing from claimant.

2. Jurors cannot ordinarily take books, papers and depositions with them to the jury-room. But the irregularity of permitting it is waived by failing to object thereto.

3. A survivor cannot testify adversely as to private dealings with a deceased person, even in rebuttal of another's testimony as to a conversation between them overheard by the witness.

Error to Van Buren. (Mills, J.) Jan. 24.—Feb. 6.

Appeal from allowance of claim against estate. Claimant brings error. Reversed.

*Howard & Roos* for appellant.

*Benj. F. Heckert* and *Dallas Boudeman* for appellee.

52 MICH.—35

SHERWOOD, J.  The claimant and Evered E. Chadwick named in this case were brothers, and previous to the decease of the latter, for several years prior to April 4, 1879, carried on business together as copartners at Decatur in this State.  At that date the copartnership was dissolved, a settlement had, and a division of most of the property made between them.  A third brother, Theodore, assisted and arranged the settlement, which was finally concluded between the parties, and made the division of the property for them, and both the settlement and division of the property was reduced to writing at the time by him.

Upon the division of the property the deceased was found indebted to claimant in the sum of $1878.78, and therefor gave his note, dated April 5, 1875, due in ten days for that amount.

After the dissolution the deceased continued business in the store until he died, paying $250 as rent for claimant's half interest therein.

The plaintiff's claim presented against the estate of E. E. Chadwick to the judge of probate for allowance, consisted of the said note, rent of claimant's half of the store from the time of settlement till May, 1882, some other miscellaneous items, and an item of $500 for money borrowed, in all amounting to the sum of $3717.55, upon which credit was given for a large number of items amounting to $1,-147.58.  The claim was allowed the claimant with interest, in probate court, at the sum of $1168.05.  The administrator took an appeal to the circuit, when the amount allowed claimant was reduced by the verdict of the jury to the sum of $375.75, and the claimant now brings error.

The principal contest at the circuit was as to the $500 item for money borrowed by the deceased on the 15th day of April, 1879.  The administrator denied that the deceased ever borrowed the money as claimed.  The brother, Theodore, testified that he was present on the 15th of April, when the money was loaned by the claimant to the deceased, and saw the transaction, and saw the latter enter the item in his book K, which, with the entry therein, was

introduced in evidence.   The claimant then made proof of the other items in his account, by admissions and otherwise, and rested his case.

The defendant then placed Marion Chadwick (who was son of the deceased, twenty-four years old, and administrator of his father's estate) upon the stand, and he testified that after the dissolution he worked in his father's store and commenced taking charge of the books and looking after the business generally ; that on the 12th of April, 1879, his father returned from Chicago; that on the 15th of April his mother and other ladies were in the store, and he commenced to state what they did.

Counsel for claimant here objects to what the ladies did and what goods were placed in the store that day, as immaterial.   The court permitted the testimony.   This testimony was offered as tending in some way to show that the claimant did not make the loan to his brother.   The testimony given was subject to the objection taken, though we think the answer given could have hardly influenced the result.

The administrator sought to avoid or contradict the positive testimony of Theodore Chadwick that he was present and saw his brother let E. E. Chadwick have the $500 on the 15th of April, and for this purpose was permitted to show, against objection of claimant, that deceased kept a cash account; that some of the entries were made by the witness and some by his father; that he had the book in the court-room, and on his cross-examination said he kept the book.

"I got the items entered out of the drawer at night. There was always cash in the drawer at night.   I was generally there myself.   The cash-book represents what I took out of the drawer myself.   I think I kept a correct account of the cash received by my father in and about his business there.   I was generally there to know what he did receive. If he received any when I was not there I would generally see it when I got back, on the book.   I would not know anything about transactions my father did when I was not present.   I do not find any place where my father is debited with $500 to cash account.   If the money was not put in the drawer I would not put it on the book.   If it was

placed in the safe I would not make an entry on the cash-book."

We think the objection was well taken to this testimony. It was irrelevant and immaterial and should have been excluded. The testimony lacks the element of certainty; and it nowhere appears that the money claimed to have been borrowed had any connection with the business of the store, or that on the store-books would have been a proper place for it to have appeared.

The testimony of Marion Chadwick to the effect that he was present on several different occasions when conversation occurred between the deceased and claimant about other claims claimant held against deceased, but never heard him say anything about the $500, was also incompetent and had no tendency to show the money was not borrowed.

The same is true of the testimony of the witness Rosewarren, which was objected to. Jurors believe testimony competent for the purpose for which it is admitted, and though very slight evidence of the fact sought to be proved, its weight cannot be controlled by the court; hence the danger of irrelevant testimony of this kind. Much of the negative testimony put in this case was not only irrelevant, but clearly misleading, and the testimony offered from various witnesses that they did not know of deceased having any such amount of money about him or in his hands or "about the establishment," was of the same character and mischievous. It should not have been allowed.

The testimony of Marion Chadwick relating to the set-off, being derived entirely from an inspection of the book or from what the deceased told him, was clearly hearsay and immaterial, and it was error to admit it.

It is not disclosed what connection a purchase of goods in Chicago by the deceased eight or ten days before the $500 was borrowed, on a credit of 30, 60 and 90 days, had with the issues in the case; still the fact was admitted as relevant and competent testimony. It certainly had no tendency to prove the money was not borrowed as claimed, and should not have been admitted.

The widow of the deceased was allowed to testify that she did not know of her husband borrowing any money of claimant. This was irrelevant, and this, with the other testimony of the same class, was hurtful to claimant's interests. She had also been permitted to testify to a conversation she claimed to have heard between her husband and the claimant the next day after the settlement, which was prejudicial to rights of complainant and was offered as such. On the rebuttal the claimant took the stand and proposed to contradict the witness, but was refused leave so to do by the court on the ground that he was prohibited by statute from testifying as to that matter. This ruling was correct. The case comes within the statute and the former ruling of this Court in *Downey v. Andrus* 43 Mich. 65.

It is usually improper to let the jury take the testimony, consisting of books, papers and depositions etc., with them to the jury-room. The jury are to receive the testimony in open court. The plaintiff, however, waived the irregularity by allowing it to be done in this case without objection. It is unnecessary to discuss the case further.

The judgment must be reversed and a new trial granted.

The other Justices concurred.