SILVERSTONE v. LONDON ASSURANCE CORPORATION.

SAME v. NORTHERN ASSURANCE CO., LTD., OF LONDON.

SAME v. SOVEREIGN FIRE ASSURANCE CO. OF CANADA.

1. INSURANCE—FRAUD—WILFUL MISSTATEMENTS.

Plaintiff sued defendant insurance corporation on certain insurance policies upon his stock in one of two stores which he operated. The defense was the claim that plaintiff wilfully misrepresented his loss. Plaintiff testified that in making financial statements to various banks, etc., he did not include certain goods stored in a barn and in his house. *Held*, that though it was extraordinary that plaintiff should have understated his assets in applying for credit, the claims made relative to the reserve goods were for the jury.

2. SAME—FRAUD—FALSE PROOFS OF LOSS.

As requested by defendant, the trial court instructed the jury that the burden was on plaintiff to satisfy the jury as to what goods were destroyed, and that it was for them to determine whether, at the time of the fire, the items mentioned in his proofs of loss were in the store, that if not, and plaintiff knew it when he presented his proofs of loss, he could not recover though some of the goods were destroyed; that if plaintiff purposely committed fraud in his affidavit of loss or swore falsely as to the cause of the fire or value of the destroyed property, such statements avoided his policy. *Held*, that defendants' request to charge that if plaintiff included in his proofs of loss articles not in his store, intending to deceive, etc., or if he exaggerated his loss, with such intent, he would not recover, were substantially given by· the general instructions.

3. SAME—CHARGE—FRAUDULENT PROOFS OF LOSS.

The court instructed the jury that the credibility of the witnesses and weight of the evidence were for the jury, who, if they believed any witness had intentionally given false evidence, might reject his entire testimony; if they considered the witness unworthy of belief and could distinguish the true from the false portions they might

give such weight to the evidence as they believed it should receive. *Held*, in view of these instructions, it was not improper to refuse defendants' request that the jury should consider plaintiff's candor, general attitude and willingness to lay all the facts before the jury, etc., in passing on the issue as to fraudulent proofs of loss.

4. SAME—WITNESSES—CHARGE.

Where defendant requested the instruction that if the burned portion of plaintiff's store was too small to contain the goods described as totally lost, and if plaintiff intentionally exaggerated the amount and cost of the goods so destroyed, he could not recover, the trial court rightly declined to give the instruction on the ground that it attempted to single out particular features and particular witnesses giving the claim of the defense undue prominence.

5. SAME—APPEAL AND ERROR—TRIAL—JURY.

The matter of permitting the jurors to take exhibits to their room is generally one for the discretion of the trial court: only in case of abuse of such authority by the trial court will a verdict be set aside on error. However, the failure of defendant to except to the action of the court in refusing to send exhibits to the jury room at the request of the jury prevents the reversal of judgment on such ground.

Error to St. Clair; Tappan, J. Submitted April 27, 1915. (Docket Nos. 45, 46, 47.) Decided July 23, 1915. Rehearing denied December 22, 1915.

Assumpsit by Morris M. Silverstone against the London Assurance Corporation and other defendants named in the title, by separate actions which were consolidated by stipulation. Judgment for plaintiff. Defendant brings error. Affirmed.

*Selling & Brand* and *James A. Muir*, for appellants.

*Walsh & Walsh*, for appellee.

KUHN, J. These cases had the consideration of this court in an opinion written by Mr. Justice Stone, reported in 176 Mich. 525 (142 N. W. 776). Having

been reversed, on the new trial the jury again found in favor of the plaintiff for the full amount claimed. An examination of this opinion will disclose the claims of the parties. On the new trial, as on the trial before, the testimony was very voluminous.

In the brief of counsel, in support of the contention that the verdict was against the overwhelming weight of the evidence, considerable reliance is placed upon the proposition that the plaintiff, in making the numerous statements with reference to his financial condition with banks and commercial agencies, did not include his claimed reserve stock, and that therefore it should be determined by this court that, as a fact, no such reserve stock existed. It may be said that it is a strange and extraordinary circumstance that, in seeking the establishment of credit, the plaintiff should have minimized his property assets, and thus obtained less credit than he might have been entitled to if a true statement of his property, as claimed by him, had been made. However, the question of the existence of this reserve stock and the plaintiff's representations with reference thereto were questions of fact for the jury.

It appears that, before the last insurance was placed upon this stock, Mr. Homer McGraw, the agent who wrote the insurance, accompanied by Mr. England, a special agent who had been in the insurance business for many years, inspected the premises and the risk. Testimony additional to that had on the previous trial as to these statements made to the banks was introduced on this trial. But, after a careful review of the record, we are not satisfied that the verdict was so against the overwhelming weight of the evidence as to make it error for the trial judge to have denied the motion for a new trial based on that ground. As was said by Mr. Justice BIRD, in *B. Marx & Son* v. *King,* 177 Mich. 662, at page 665 (144 N. W. 553, at page 554) :

"But we are of the opinion that the additions to the testimony did not so change the situation as to remove the question from the domain of fact. It was still a question for the jury, as there was conflicting testimony which, if believed, would justify the verdict."

Two juries, duly qualified and disinterested, so far as it appears, have reached the same result, and as was said by Mr. Justice STEERE in *Krouse* v. *Railway,* 170 Mich. 438, at page 442 (136 N. W. 434, at page 436) :

"While not necessarily controlling, this is significant. The court will only interfere when a verdict is so manifestly contrary to the overwhelming weight of evidence and so palpably wrong as to force the conviction that it was the result of either passion or prejudice or a dense incapacity to analyze testimony and discern the truth."

See, also, the following recent decisions of this court: *Gardiner* v. *Courtright,* 165 Mich. 54 (130 N. W. 322) ; *Fike* v. *Railroad Co.,* 174 Mich. 167 (140 N. W. 592) ; *Druck* v. *Lime Co.,* 177 Mich. 364 (143 N. W. 59) ; *McGary* v. *Motor Co.,* 182 Mich. 345 (148 N. W. 722).

The following requests to charge were submitted to the trial court by defendants' counsel and refused:

"(6) If you believe from the evidence that the plaintiff included in his proofs of loss articles of property not in the store at the time of the fire, with the intent to defraud the companies, this would avoid the policies, and the plaintiff cannot recover in these suits.

"(7) In determining whether plaintiff purposely swore falsely in his proofs of loss or before the notary, it is your duty to consider his candor or lack of candor, his general attitude as a witness, and his desire or lack of desire to lay the facts fully before you, and the reasonableness of his story. * * * If you find that plaintiff included in his proofs of loss an exaggerated statement as to the amount of loss resulting from the fire, with intent to defraud the companies, this would avoid the policies, and the plaintiff cannot recover in these suits."

"(11) If you find that the burned area was entirely too small to contain any such amount of goods of the

cost claimed in the proofs of loss to have been totally destroyed, and that plaintiff intentionally, in his proof of loss, exaggerated the amount of and cost of the goods claimed to have been totally destroyed ($5,243), your verdict must be for defendants."

We believe that the sixth request to charge was given in substance by the giving of defendants' twelfth request to charge, which read as follows:

"The burden is on the plaintiff to satisfy you what was there. (I suppose that means what goods were there.) You are to say whether there was there, at the time of the fire, the items of property which are described in the plaintiff's proofs of loss. If they were not all there at the time of the fire, and you are convinced that plaintiff knew it when he presented his proofs of loss, then your verdict must be for the defendants, even though some of the goods were there."

The court also said:

"If you find from the proofs that the plaintiff purposely committed fraud by means of his proofs of loss or any other material proofs or proceedings, or swore falsely therein, or swore falsely as to the origin of the fire or as to the amount of value of the stock of fixtures he had in the store at 450 Gratiot avenue at the time of the fire, or while this insurance was in force, then said false and fraudulent statements void the policies in question. If this be your finding, your verdict must be rendered in favor of the defendant companies."

With reference to the defendants' seventh request to charge, it will be noted that it is in two sections. The substance of the second section was given in the portion of the charge above quoted.

The first section of the request attempts to single out the plaintiff from the other witnesses, and requests the jury to consider his candor or lack of candor, his general attitude, as a witness, his desire or lack of desire to lay the facts before them, and the reasonableness of his story. The court, in his charge, gave the

following general instruction as to the credibility of witnesses:

"You are further instructed that the credibility of witnesses and the weight of the evidence are matters for your determination solely. If, during the trial, you are convinced that any witness has intentionally given false testimony, you have the right to reject the entire evidence of that witness, if you believe the witness unworthy of belief. You also have the right to separate truth, if any, from untruth, if any, and give such weight or credence to the evidence as you believe it deserves."

In view of the general charge above quoted from, we do not think it was error for the court to refuse to single out a particular witness. See *Frazer* v. *Haggerty*, 86 Mich. 521 (49 N. W. 616).

Neither do we think it was error for the court to have refused defendants' eleventh request to charge, which was also an attempt to single out a particular feature of the evidence which was disputed—as to whether a certain portion of the store could have contained a certain amount of goods or not. We have carefully examined the entire charge of the court, and are satisfied that the issues here involved were fairly and impartially submitted to the jury with a correct statement of the general rules of law applicable thereto.

During the defendants' argument to the jury, in an effort to show discrepancies between the original invoices of certain goods and the inventory of his stock made by the plaintiff, and in order to show that the claim made by plaintiff that a certain amount of his reserve stock had not been inventoried was false, and in fact that everything he had was inventoried, the following occurred:

"*Mr. Selling*: I am going to ask one of you gentlemen to take the inventory book—

"*Mr. Walsh*: I object to any such procedure.

"*Mr. Selling*: I want the jury to take this exhibit

and see with me whether that which this man claims was never inventoried and was part of his reserve stock, whether, as a matter of fact, it was not inventoried and everything he had was inventoried.

"*The Court*: That will necessitate each juror having that in his hand at the time you are making the comparison. You may make the comparison yourself, and, if you wish to, you can give them the inventory to take to the jury room with them.

"*Mr. Selling*: All right. All right, gentlemen, if you will collect around here so you can see.

"*The Court*: No, they can take it to the jury room and see it later.

"*Mr. Selling*: Can I at this time call attention to it, what it is?

"*The Court*: Yes, but I do not want to wait to pass that around to each juror.

"*Mr. Selling*: I do not intend to pass it around, if the court please. I want them to see it. If they will come here, I will show the bills on page 18. This is his inventory of January, 1910, pages 18 and 19. I will take page 18 now," etc.

Thereupon counsel proceeded to make his own comparisons of various items, and occupied the entire time allotted to him for argument on behalf of the defendants. At the conclusion of the arguments, the following took place:

"*Mr. Selling*: How about the exhibits? Are they going to the jury?

"*The Court*: It is just as you gentlemen agree.

"*Mr. Selling*: How about that, Mr. Walsh?

"*Mr. Walsh*: No.

"*Mr. Selling*: Your honor, I do not press my argument on these exhibits, relying upon your honor's statement that they would go to the jury.

"*The Court*: I made the suggestion that the jury should not take the time in looking at that, but in place of that you send them to the jury room.

"*Mr. Selling*: In my argument I would have pressed it a little stronger and would have had them around, if your honor had not said that would be done.

"*Mr. Selling*: I want to except to the refusal of the court to permit the exhibits to go to the jury."

After the jury had retired, they sent word to the court officers that they desired to see certain of the defendants' exhibits. As to what then occurred may best be gathered from the reasons given by the trial court in his denial of a motion for a new trial, in which he said:

"Causes 14, 15, 16, 17, and 18 relate to the matter of procedure in failing to send exhibits to the jury room at the close of argument and after the cause had been submitted to the jury.

"Counsel for defendants apparently bases these several reasons upon defendants' exhibit attached to his motion—a letter of the court addressed to counsel for defendant under date of December 23, 1913. This is a private letter to counsel from the presiding judge, and necessarily not a complete finding as to the circumstances pertaining to the inventory and exhibits mentioned therein.

"During the trial the entire contents of the inventory of January 15, 1910, other inventories, and all exhibits received in evidence were placed before the jury over and over again with the most minute detail. As these exhibits were received in evidence, including the inventory in question, Mr. Selling, counsel for defendants, reproduced their contents before the jury upon large sheets of manila paper hung upon a blackboard, in heavy writing and large figures made with black crayon. He also made a summary of these in plain figures on the blackboard.

"By these means, and by means of the examination of the witnesses as the inventories and exhibits were received in evidence, the jury were fully informed as to the inventories and exhibits, their character, purport, and what counsel claimed for them. Excluding the affidavits of jurors in opposition to the motion and concerning these exhibits, it is my conclusion that the jurors were so fully informed as to the inventories and exhibits in question that it was not necessary that these should have been furnished them while they were considering the case, notwithstanding the fact the court intended to send such exhibits as should be agreed upon to the jury room at the close of the argument.

"As to what transpired after the case had been submitted to the jury, the following are the facts: At the close of the arguments Mr. Selling left the courtroom for Detroit, leaving Mr. Muir, of counsel, in charge for defendants. Some time after the jury had had their supper, and while the court was at his residence, the court officer informed the court by phone that the jury had called for an inventory and other exhibits. He was directed to call Mr. Muir and Mr. Walsh at once, and, when the court arrived at the courtroom about half an hour later, he informed the court that he had done so, and found that Mr. Muir was at a theater; that he had called by phone for Mr. Muir at the theater but was informed by those at the ticket office that they could not get him.

"Mr. Walsh was in the courtroom. He then still claimed that the exhibits should not go to the jury, and added, that if the court allowed the defendants to select and send in exhibits to the jury, he should select other exhibits and insist upon these being sent to the jury. Mr. Walsh waited a considerable time, probably nearly or quite half an hour, for Mr. Muir's appearance, and then left the courtroom and did not return thereafter. The court then instructed the court officer to inform the foreman of the jury that the court could not send in the exhibits asked for, which he afterwards informed the court he had done. No other message or instruction was sent to or given the jury by the court or court officer.

"Soon after this was done, Mr. Muir appeared at the courtroom and was informed by the court of all that had taken place. He stated that he would consent that all exhibits be given the jury, and after a short time he also left the courtroom. At the time that Mr. Walsh was in the courtroom, and also when Mr. Muir was present, the court had no knowledge as to the whereabouts of the exhibits. Mr. Muir did not call for them nor request the court to send for them. He raised no objection to what had been done, made no request that the jury be called for, and made no request that the court stenographer be called to make a record of the proceedings, or to record objections or exceptions to anything that had been done."

Complaint is made as to the course of procedure

adopted by the trial court in sending his communication to the jury, viz., instructing the court officer to inform the foreman of the jury that the court officer could not send in the exhibits asked for.

It will be noticed from the findings of the court that, when Mr. Muir was present in the court, he was informed of all that had taken place, and raised no objection to what had been done, and made no request that the jury be called for; nor was any request made that the stenographer be called to make a record of the proceedings, or to record objection or exceptions to anything that had been done. We think that the failure of counsel to make proper objection to the course taken by the trial judge at the time that his attention was called to it was a waiver of any irregularity in the proceeding. What was said by Mr. Justice MOORE in *Le Beau* v. *Construction Co.*, 109 Mich. 302, at page 305 (67 N. W. 339, at page 340), is also applicable here:

"In the case at issue, counsel made no objection to the course taken by the circuit judge until the verdict was rendered. It seems to be pretty well settled that, after one has knowledge of an irregularity, he cannot remain silent, and take his chances of a favorable verdict, and afterwards, if the verdict goes against him, base error upon it. 2 Thomp. Trials, p. 1976. If the action of the trial court was irregular, the irregularity was waived by making no objection until after the verdict was rendered."

The general rule in this State seems to be that it is within the discretion of the trial court to allow exhibits to be taken to the jury room. *Tubbs* v. *Insurance Co.*, 84 Mich. 646, 655 (48 N. W. 296) ; *Walker* v. *Newton*, 130 Mich. 576 (90 N. W. 328) ; *Farrell* v. *Haze*, 157 Mich. 374, 379 (122 N. W. 197). And in *Bulen* v. *Granger*, 63 Mich. 311, 317 (29 N. W. 718), the statement is made that the general rule is against the practice of sending exhibits to the jury, where ob-

jection is made, and, if this court is satisfied that prejudice resulted therefrom, no hesitation should be had in reversing the case.

In view of the record here made, should it be said that prejudicial error was caused by the failure of the trial judge to allow the exhibits to go into the jury room? As it is fundamental that the jury are to receive the testimony in open court (*Chadwick* v. *Chadwick*, 52 Mich. 545, 549 [18 N. W. 350]), and as it conclusively appears from the findings of the trial judge above set forth that much time was consumed by counsel with reference to these exhibits, their contents were produced before the jury upon large sheets of manila paper, hung upon a blackboard, in heavy writing and large figures made with black crayon, and they were properly and fully exhibited to the jury, so that they completely understood their contents, character, and purport, and what counsel claimed for them; and furthermore that, at the time the statement was made by the court to counsel as to having the exhibits taken into the jury room, counsel went fully into the comparisons between the inventory and the invoices and consumed the entire time allotted to him for argument. We are not satisfied that any prejudice resulted to the defendants as a result of the refusal of the circuit judge to send the exhibits into the jury room, or that there was any abuse of discretion on the part of the judge in his refusal to do so.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Brooke, C. J., and Stone, Ostrander, Bird, Moore, and Steere, JJ., concurred.

The late Justice McAlvay took no part in this decision.