SOCHA v PASSINO

Docket No. 60354. Argued October 6, 1978 (Calendar No. 16).—Decided February 5, 1979.

Thomas C. Socha brought an action for damages for injuries he suffered when a railing on a second-story balcony at the home of the defendants Jack and Jaclyn Passino gave way when he leaned against it and he fell to the ground. A jury in Cheboygan Circuit Court, Martin B. Breighner, J., returned a verdict for the defendants. During direct examination of an expert witness, a general building contractor, the plaintiff's attorney asked questions which revealed that the witness had spoken with the plaintiff's attorney and visited the accident scene with him. The plaintiff objected to the failure of the trial court to give a requested Standard Jury Instruction to the effect that an attorney may properly talk to a witness concerning his testimony. The plaintiff, after calling the defendants as witnesses for cross-examination under the statute and attempting to impeach them by reading portions from their pretrial depositions, offered the entire transcripts of the depositions as exhibits. The defendants objected that the transcripts of the deposi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 574, 609, 610.
Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.
[2] 75 Am Jur 2d, Trial §§ 192, 317.
[3] 75 Am Jur 2d, Trial §§ 574, 589, 604, 608-610.
Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.
[4] 81 Am Jur 2d, Witnesses §§ 520, 524, 527, 596, 597, 603, 604, 610.
Mode of proof of testimony given at former examination hearing or trial. 11 ALR2d 89.
[5] 23 Am Jur 2d, Depositions and Discovery §§ 99, 103, 108, 110.
[6] 75 Am Jur 2d, Trial §§ 574, 588, 589, 604, 610.
Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.
[7] 75 Am Jur 2d, Trial §§ 589, 610, 675.
Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d, 128.
[8] 75 Am Jur 2d, Trial §§ 574, 590, 610, 651, 652.

tions contained irrelevant and prejudicial matter. The trial court denied the plaintiff's motion to admit the transcripts into evidence. The Court of Appeals, M. J. Kelly, P.J., and M. F. Cavanagh and Rood, JJ., affirmed in a memorandum opinion (Docket No. 28729). Plaintiff appeals. *Held:*

1. The general court rules make mandatory the giving of an applicable Standard Jury Instruction when requested. The Court has put its supervisory authority behind the consistent and uniform application of the Standard Jury Instructions. Accordingly, the Court adopted a strict rule that where there is an omission of, or a deviation from, an applicable and accurate Standard Jury Instruction, prejudicial error will be presumed, provided that the instruction was properly requested at trial.

2. The record in this case shows a discussion between an attorney and an expert witness and a visit by them to the scene of the accident. Thus SJI 2.06 concerning attorney contact with a witness was clearly applicable. Whether the defendants suggested impropriety of the contact does not control the applicability of the instruction. The standard is applicability, not necessity. While the instruction may serve a curative function where impropriety has been suggested, clearly it has an informative function as well. The trial judge's discretion is required in determining whether the instruction is applicable and whether it accurately states the law. In this case the instruction was applicable, it was accurate, and it was requested; refusal to give it was reversible error.

3. The general court rules are silent concerning the method by which a deposition is to be admitted into evidence. Question by question is the appropriate method by which to impeach a witness with former testimony recorded in a deposition. Generally, admission of evidence and taking of exhibits to the jury room lies within the discretion of the trial judge. Especially is the trial judge's discretion important in a case such as this, where objections to admissibility of the deposition transcripts were made on the grounds of relevance and prejudice. Other than some general statements about the use of deposition testimony, the plaintiff has alleged no prejudice, nor has he pointed with any specificity to any material he sought to have admitted other than that read into the record. There was no reversible error in the refusal to admit the deposition transcripts into evidence as exhibits.

The decisions of the trial court and the Court of Appeals are reversed as to the refusal to give the Standard Jury Instruction.

Chief Justice Coleman, joined by Justice Ryan, dissented. She

agreed that denial of the plaintiff's motion to admit the type-written transcripts into evidence was not reversibly erroneous. On the issue of the jury instruction, she would affirm on the ground that 1) either the strict rule of compliance with the Standard Jury Instructions under pain of automatic reversal should be modified to permit some flexibility in the appellate review process or 2) the Court should at least require strict compliance with the rule's prerequisites of applicability, accuracy and a proper request for the Standard Jury Instruction submitted with citation of the support in the record upon which the request relies.

1. Experience has shown that inflexible rules of strict compliance are unwise because they are unnecessarily severe and do not always advance justice. Wasted effort is certainly one of the inevitable results that will follow from such a wooden rule of strict compliance. Also, the physical, psychological and economic repercussions to the originally successful litigants of a retrial are entitled to greater deference than a strict-compliance rule gives them. Sometimes individuals must bear a burden for the good of the whole, but the implementation of the Standard Jury Instructions does not require such sacrifices. The goals of the Standard Jury Instructions are important, but not more important than the integrity of the guilty plea process or the constitutional and other rights of an accused that are subject to the "harmless error" rule.

2. Some Standard Jury Instructions may be so essential to a fair determination of every case that their omission can never be considered harmless error. This case, however, demonstrates that the Standard Jury Instruction at issue is not one of those instructions. Plaintiff's counsel in passing brought out the fact that he had spoken to the expert witness. Defense counsel did not comment on the contact between plaintiff's counsel and the expert witness, and did not insinuate any impropriety. Furthermore, in his argument to the jury he affirmatively stated that he believed one of the expert witness's statements. No other mention of the fact that plaintiff's counsel had spoken with the witness was made by anyone during the rest of the trial. When the trial judge stated that there had not been any testimony that an attorney had talked to a witness, plaintiff's counsel did not bring the relevant testimony to his attention. In these circumstances, omission of the Standard Jury Instruction did not prejudice the plaintiff.

3. Plaintiff's counsel in this case failed to comply with the requirement of pointing out the applicability of the requested Standard Jury Instruction. So long as strict compliance with

the Standard, Jury Instructions under penalty of automatic reversal remains the rule, the moving party should be required to do more than the plaintiff's counsel did in this case. As a minimum, the testimony allegedly supporting the requested instruction should be brought to the trial court's attention so that it can make an informed decision and so that the number of retrials can be reduced to a minimum.

## Opinion of the Court

1. Trial — Instructions to Jury — Standard Jury Instructions.

An omission of, or a deviation from, an applicable and accurate Standard Jury Instruction will be presumed to be prejudicial error, provided that the instruction was properly requested at trial (GCR 1963, 516.6[2]).

2. Witnesses — Contact With Attorney — Instructions to Jury — Standard Jury Instructions.

The Standard Jury Instruction concerning contact between a witness and an attorney may serve a curative function when impropriety has been suggested in the contact, but the instruction has an informative function as well as is clearly applicable where the record shows testimony about a discussion between the plaintiff's attorney and an expert witness and a visit by them to the scene of the accident in suit, whether or not the defendant suggested the contact was improper (SJI 2.06).

3. Trial — Instructions to Jury — Standard Jury Instructions — Discretion.

A trial court's discretion is required in determining whether a requested Standard Jury Instruction is applicable and whether the instruction accurately states the law (GCR 1963, 516.6[2]).

4. Witnesses — Impeachment — Former Testimony.

The appropriate method by which to impeach a witness with former testimony recorded is question by question.

5. Evidence — Admissibility — Depositions — Transcripts — Witnesses — Impeachment.

Refusal to admit the entire transcript of a witness's deposition into evidence for purposes of impeaching the witness's testimony with some portions of the prior recorded testimony was not reversible error where objections to the admissibility of the entire transcript were made on grounds of relevancy and prejudice, and where the proponent of the transcripts has alleged no prejudice nor pointed with any specificity to any

material he sought to have admitted in the transcripts other than that read into the record (GCR 1963, 302.4).

Dissenting Opinion by Coleman, C.J.

See headnotes 4, 5.

6. Trial — Instructions to Jury — Standard Jury Instructions.
The goals of the Standard Jury Instructions are important, but their implementation does not require an inflexible rule of strict compliance under penalty of automatic reversal.

7. Trial — Instructions to Jury — Standard Jury Instructions.
Omission of the Standard Jury Instruction concerning contact between a witness and an attorney did not prejudice the plaintiff requesting it where plaintiff's counsel in passing brought out the fact that he had spoken to an expert witness, defense counsel did not comment on the contact with the witness and did not insinuate any impropriety, no other mention of the contact was made by anyone during the rest of the trial, and when the trial judge in ruling upon the requests for instructions to the jury stated that there had not been any testimony that an attorney had talked to a witness, plaintiff's counsel did not bring the relevant testimony to his attention; therefore omission of the requested Standard Jury Instruction should not require reversal of the verdict of no cause of action (SJI 2.06).

8. Trial — Instructions to Jury — Standard Jury Instructions.
A party requesting a Standard Jury Instruction, at a minimum, should be required to bring to the trial court's attention the testimony allegedly supporting the requested instruction, so long as strict compliance with Standard Jury Instructions under penalty of automatic reversal remains the rule, to permit the trial court to make an informed decision on the request and to reduce the number of retrials to a minimum (GCR 1963, 516.6[2]).

*Sumpter, Harrington & Loznak, P.C.,* for plaintiff.

*Clark, Stroup, Brown, MacKenzie & Pointner* for defendants.

Fitzgerald, J. Plaintiff was injured while re-

moving a mattress from the home of the defend-
ants, plaintiff's ex-wife and her husband. As plain-
tiff handed the mattress from a second-story bal-
cony to friends below, he leaned against a railing
constructed by defendant Jack Passino. The railing
gave way and plaintiff fell approximately 15 feet
to the ground below.

Plaintiff filed suit alleging negligence in:

"a. Using an inadequate means of attaching said
railing to the side of a wood-sided house.

"b. Failing to warn plaintiff that the railing thus
constructed might or would give way if weight were
placed against it, although he [Jack Passino] was then
and there present at the time of the said injury.

"c. Failing to construct the said railing properly.

"d. In failing to maintain his premises in a reason-
ably safe condition."

The jury returned a verdict of no cause of action
in a February 1976 trial. On appeal the Court of
Appeals affirmed, stating in a memorandum opin-
ion, "[a]fter a careful review of the record and
briefs in this case, we find no reversible error".

We granted leave to appeal, limited to two ques-
tions:

"(1) whether the trial court's refusal to give, on
request, Standard Jury Instruction (Civil) 2.06, was
reversible error; and (2) whether the refusal to allow
the depositions of the two defendants into evidence
violated GCR 1963, 302.4, so as to require a new trial."
402 Mich 881 (1978).

I

The first question, whether refusal to give SJI
2.06 on plaintiff's request was reversible error,

arises from questions asked by plaintiff's attorney of plaintiff's expert witness. The record reveals that plaintiff's expert, a general building contractor, had spoken with plaintiff's attorney and had visited the accident scene with him. Direct examination of the witness began as follows:

"*Q.* Mr. Hunsaker, do you remember the month of August, 1974?

"*A.* Yes.

"*Q.* And you were contacted by myself, do you recall that?

"*A.* Yes.

"*Q.* What did you do in reference to that contact?

"*A.* You asked me to go out and look at a railing that had broken and somebody had been hurt.

"*Q.* And did you do that?

"*A.* Yes.

"*Q.* Who did you go out there with?

"*A.* Yourself.

"*Q.* All right. What did you do after you got there?

"*A.* We stood on the ground looking up around at the railing. Because your question to me was what would possibly cause that railing to let go.

"*Q.* And how long were you out there?

"*A.* About a half hour.

"*Q.* What else did you do while you were out there?

"*A.* Observing, in the process of observing, I looked down on the ground and I seen some wood screws.

"*Q.* What did you do with those screws?

"*A.* Reached over and picked them up and looked at them.

"*Q.* What did you do with them thereafter?

"*A.* Held them in my hand while I was on the site.

"*Q.* And then what did you do?

"*A.* Later at your office I inserted them into an envelope and signed the envelope."

At the close of the instructions to the jury,

plaintiff objected to the court's not having given requested SJI 2.06, which reads:

"It has been brought out that an attorney has talked with a witness. An attorney may properly talk with a witness for the purpose of learning what the witness knows about the case and what testimony he will give."

Both the trial judge and defense counsel thought the instruction unnecessary:

"*The Court:* I don't really have any reluctance to give 2.06 if it's important, Mr. Sumpter [plaintiff's counsel]. It seems to me that there really wasn't any testimony brought out that an attorney talked to a witness, unless you want to infer that the deposition represents an attorney talking to a witness. But I would think that would be rather unnecessary. But if you want 2.06 given, I can give that.

"*Mr. Stroup [defense counsel]:* There was no argument even that anybody was giving distorted testimony by reason of having been with an attorney or being interviewed by one.

"*The Court:* No, I really don't see the necessity for it, Mr. Sumpter."

In denying plaintiff's motion for a new trial, the trial judge stated, in a written opinion:

"Plaintiff now relies upon *Javis v Ypsilanti Board of Education,* 393 Mich 689; 227 NW2d 543 (1975). This court does not believe *Javis* requires reversal.

"*Javis* requires only that applicable instructions be given and SJI 2.06, under the circumstances of this case, was inapplicable. The omission of such instruction could not have affected the jury verdict.

"This trial court cannot believe that *Javis* was intended to so constrict the discretion and judgment of the trial court as to make trial judges robots and automatons by requiring the recitation of [standard jury instructions] that do not fit the sense of the case. If

the function of the trial judge is reduced to the role of a computer, and the trial judge must deliver instructions when the button is pressed, then much has been lost in the administration of justice."

Thus, we are required to revisit *Javis*. We stated in *Javis* that GCR 1963, 516.6(2)[1] makes mandatory the giving of an applicable standard jury instruction when requested. We chose a strict standard of review for whether an appellate court should find reversible error in failure to give such instruction. We rejected a harmless error standard, finding that standard not unreasonable, but:

"[O]ur responsibility is to adopt the position that we believe will best serve the state's jurisprudence. It is our judgment at this time that the Court should put its supervisory authority behind the consistent and uniform application of the SJI * * *." 393 Mich 689, 699.

And:

"We accordingly adopt a strict rule that we believe will provide economy in administration and fairness to the parties: Where there is an omission of, or a deviation from an applicable and accurate SJI, prejudicial error will be presumed; provided that the erroneously omitted SJI was properly requested at trial; * * *." 393 Mich 689, 702.

In the instant case the record shows a discussion between an attorney and an expert witness and a visit to the accident scene. Thus SJI 2.06 concerning attorney contact with a witness was clearly applicable. While no issue was made of the attor-

[1] "Pertinent portions of Michigan Standard Jury Instructions (SJI) published under authority of this subrule *shall* be given in each civil case in which jury instructions are given if (a) they are applicable and (b) they accurately state the applicable law." (Emphasis supplied.)

ney-witness contact in the sense of defendants' suggesting any impropriety, we do not believe whether or not defendant suggested impropriety controls the applicability of the instruction. The standard is applicability, not necessity. While the instruction may serve a curative function when impropriety has been suggested in attorney-witness contact, clearly the instruction has an informative function as well. The comment to the instruction so indicates:

"This instruction is unnecessary unless the fact of an interview has been mentioned during the trial. The court may wish to give this instruction at the time this fact is brought out." Michigan Standard Jury Instructions—Civil (Ann Arbor: Institute of Continuing Legal Education), p 2.06.

We do not believe *Javis* totally constrains the discretion of trial judges. The judge's discretion is still required in determining whether or not the instruction is applicable and whether or not the instruction accurately states the law.[2]

We have reconsidered the *Javis* rule in the factual context of this case. We reaffirm what we said in *Javis:*

"The SJI were compiled in an effort to uniformly present juries in civil cases with clear, concise and unbiased instructions to guide their deliberations. Secondarily, the SJI were also designed to conserve the energies of trial counsel and the trial courts by eliminating the need to draft and select proposed instructions on commonly encountered subjects for jury resolution. These enumerated benefits of the SJI are present, of course, only if the SJI are regularly employed by the trial courts." 393 Mich 689, 697.

---

[2] With respect to the second point, see *Zeni v Anderson,* 397 Mich 117; 243 NW2d 270 (1976).

We have reevaluated the arguments for and against the strict rule announced in *Javis* and reassert:

"Whatever wasted effort that will result from the reversal of those few cases wherein a trial court erroneously deviates from the SJI will be overcome by the benefits of conserved trial court time at the instruction stage, certainty to trial counsel as to how the law will be stated to the jury, and a clear and concise instruction for the jury to work with." 393 Mich 689, 699.

In this case, SJI 2.06 was applicable. It was accurate. The instruction was requested.[3] Refusal to give the instruction was reversible error.

## II

The second issue upon which we granted leave to appeal concerns the proper method by which deposition testimony is to be introduced into evidence at trial. In this case plaintiff called each defendant to the stand for cross-examination.[4] After attempting to impeach each defendant by way of reading questions and answers from the deposition, plaintiff moved to admit the entire typewritten transcript of each defendant's deposition as an exhibit. Defendant objected on the ground that the depositions contained irrelevant and prejudicial matter. Plaintiff contends the trial judge's refusal to admit the typewritten deposition transcripts is reversible error.

---

[3] We do not agree with defendants' (on appeal) and the trial judge's (in his opinion denying plaintiff's motion for new trial) characterization of plaintiff's failure to reassert the objection after the trial judge first stated "But if you want 2.06 given, I can give that", then stated, "No, I really don't see the necessity for it, Mr. Sumpter" as acquiescence in omission of the instruction. The second sentence appears to be a final decision. Further, the trial judge then proceeded directly to other matters.

[4] MCL 600.2161; MSA 27A.2161.

While GCR 1963, 302.4[5] states that "any part or all of a deposition" is admissible, and GCR 1963, 302.4(2) provides that the deposition of a party may be used by an adverse party for any purpose, both provisions are silent concerning the method by which the deposition is to be admitted.

Two of our cases note that a question-by-question approach is the appropriate method by which to impeach a witness with former testimony recorded in a discovery deposition. In *Ruhala v Roby,* 379 Mich 102, 114; 150 NW2d 146 (1967), we stated:

"The court rule [GCR 1963, 302.5] contemplates that depositions will be read question by question, so that objections to specific questions can be made and ruled upon."

And, in *Insealator, Inc v Wallace,* 357 Mich 233, 252-253; 98 NW2d 643 (1959), in response to plaintiff's allegations of error in the trial judge's refusal to admit discovery depositions in their entirety, we said:

"The court offered to go through the depositions and make a ruling as to the admissibility of testimony therein. Insealator insisted that they should be admitted in their entirety under this rule. The court properly ruled them out on objection to the effect that they contained irrevelant and immaterial testimony. Opportunity was afforded counsel to use them to contradict or impeach. This counsel apparently did not care to do. No error exists by reason of their exclusion under these circumstances."

---

[5] GCR 1963, 302.4, so far as pertinent here, reads:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, * * *."

Similarly, with reference to the Federal rule,[6] which our rule parallels, the Ninth Circuit Court of Appeals stated:

"We do not mean to sanction the practice of indiscriminately offering an entire deposition or encourage any attempt to thus impose upon the court.

\* \* \*

"[W]e believe as a general rule the better practice is for the court in the first instance to require counsel to specify the particular portions that are deemed relevant and to limit the offer accordingly." *Pursche v Atlas Scraper & Engineering Co,* 300 F2d 467, 488 (CA 9, 1961).

We find no reversible error in the trial judge's denial of plaintiff's motion to admit the typewritten deposition transcripts. The practice apparently varies from jurisdiction to jurisdiction.[7] Many courts have established a rule that deposition transcripts are not admissible, on the theory that it is what the witness said that is evidence, not the transcript of what was said,[8] as contrasted with written materials which are non-testimonial such as a deed or a contract. We apparently followed that rule at one time. See *Chadwick v Chadwick,* 52 Mich 545, 549; 18 NW 350 (1884):

---

[6] The present Federal rule in regard to the use of depositions in court proceedings is FR Civ P 32. The predecessor of FR Civ P 32(a) was FR Civ P 26(d), which was transferred to FR Civ P 32 as part of the rearrangement of the Federal discovery rules made in 1970.

[7] On a similar issue, other jurisdictions hold varying viewpoints concerning the propriety of note-taking by jurors during trial. See Anno: *Jury's Trial Notes,* 14 ALR3d 831. While plaintiff has not expressed his goal in offering the deposition transcripts as exhibits with any precision, we assume the end result would have been the presence of the depositions in the jury room during deliberations.

[8] See, generally, Anno: *Taking Depositions to Jury Room,* 57 ALR2d 1011. See, also, McCormick, Evidence (2d ed), § 217, "Exhibits in the Jury Room", pp 539-542.

"It is usually improper to let the jury take the testimony, consisting of books, papers and depositions etc., with them to the jury-room. The jury are to receive the testimony in open court. The plaintiff, however, waived the irregularity by allowing it to be done in this case without objection. It is unnecessary to discuss the case further."

See, also, *Bulen v Granger,* 63 Mich 311; 29 NW 718 (1886).

The rule has evolved, in our case law, into a general proposition that admission of evidence and taking of exhibits to the jury room lies within the discretion of the trial judge, apparently without regard to the testimonial or non-testimonial nature of the items at issue.[9]

Especially in a case such as this, where objections to admissibility were made on grounds of relevancy and prejudice is the trial judge's discretion important. Other than some general statements about the use of deposition testimony, plaintiff has alleged no prejudice, nor has he pointed with any specificity to any material he sought to have admitted other than that read into the record.[10]

We find no error as to the second issue. The decisions of the trial court and the Court of Appeals are reversed as to the first issue concerning refusal to give SJI 2.06.

[9] For example, see, *Silverstone v London Assurance Corp,* 187 Mich 333; 153 NW 802 (1915), citing *Chadwick;* and *People v Onesto,* 203 Mich 490; 170 NW 38 (1918), *People v De Frenn,* 247 Mich 698; 226 NW 710 (1929), and *Metcalf v Waterbury,* 60 Mich App 553; 231 NW2d 437 (1975), all citing *Bulen.*

[10] Although plaintiff stated in oral argument that all he ever wanted admitted were those pages of the depositions upon which the testimony used for impeachment at trial appeared, that goal is not apparent from the record or plaintiff's appellate brief. If that were the case, plaintiff has not explained how having the deposition testimony in the record twice would have advanced the truth-seeking process.

Kavanagh, Williams, Levin, and Blair Moody, Jr., JJ., concurred with Fitzgerald, J.

Coleman, C.J. *(to affirm)*. Like snowflakes, no two trials are alike. In one, an applicable, accurate and requested Standard Jury Instruction may be crucial to a fair and just determination of the cause; in another, the same instruction, although it still could technically be interpreted as applicable, accurate and requested, may be unnecessary and insignificant. The rigid rule established by *Javis v Ypsilanti Board of Education,* 393 Mich 689; 227 NW2d 543 (1975), ignores this simple truth and requires reversal and a new trial in every case regardless of the circumstances. Even if no prejudice results from the omission of an instruction, the trial court and the originally successful litigants are forced to endure the ordeal of a second trial. Because this Draconian rule fails to give adequate weight to the interests of the parties who originally prevailed and because such a rule is not necessary to achieve the goals of the standard jury instructions, we would modify or interpret *Javis* at least to permit some flexibility in the appellate review process. Alternatively, if strict compliance under pain of automatic reversal is to remain the rule, we would at least require strict compliance with the *Javis* prerequisites of applicability, accuracy and a proper request submitted with citation(s) of the record support upon which the request relies, so as to minimize the potential for abuse of the rule and reduce the number of wasteful and burdensome retrials to a minimum. Useless trials are a luxury neither the judicial system nor the individual parties can afford.

I

The *ratio decidendi* of the strict compliance rule was stated in *Javis* as follows:

"Whatever wasted effort that will result from the
reversal of those few cases wherein a trial court erro-
neously deviates from the SJI will be overcome by the
benefits of conserved trial court time at the instruction
stage, certainty to trial counsel as to how the law will
be stated to the jury, and a clear and concise instruc-
tion for the jury to work with." p 699.

Although wasted effort is certainly one of the
inevitable results that will follow from such a
wooden rule, it is by no means the only result or
the most important one. Missing from the *Javis*
equation is adequate consideration for the individ-
ual human costs the originally successful litigants
must suffer, be they plaintiffs or defendants. The
physical, psychological and economic repercussions
of a retrial are very real and are entitled to
greater deference than *Javis* shows them.

It is, of course, true that sometimes individuals
must bear a burden for the good of the whole. The
implementation of the Standard Jury Instructions,
however, does not require such sacrifices.

Experience has shown that inflexible rules of
strict compliance are unwise because they are
unnecessarily severe and do not always advance
justice. The most recent example involved GCR
1963, 785.7, the mandatory court rule dealing with
the requirements for taking and accepting valid
guilty pleas in criminal cases. In *People v Sheko-
ski,* 393 Mich 134; 224 NW2d 656 (1974)—cited by
the *Javis* majority in support of a strict standard
of review (see *Javis, supra,* at 698, fn 2)—the Court
declared:

"The requirements for a valid guilty plea after June
1, 1973 are set forth specifically in GCR 1963, 785.7.
The bench and bar are hereby advised that strict adher-
ence to those requirements is mandatory and that

neither substantial compliance nor the absence of prejudicial error will be deemed sufficient."

Less than one year later, in *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 (1975), *Shekoski* was modified to permit a more flexible standard of review. Since that time, there has been no discernible drop in the level of adherence to the requirements of GCR 1963, 785.7. Indeed, as the Court recently recognized in *People v Thornton,* 403 Mich 389, 394-395; 269 NW2d 192 (1978), adherence appears to have increased. The goals of GCR 1963, 785.7 have been substantially achieved without the heavy hand of *Shekoski* and its concomitant unnecessary reversals of fair and proper convictions.

The goals of the Standard Jury Instructions are important, but we are not convinced that they are more important than the integrity of the guilty plea process or the various constitutional and other rights of an accused that are subject to realistic harmless error rules.

It may be that some Standard Jury Instructions are so essential to a fair determination of every case that their omission, like the omission of certain provisions of GCR 1963, 785.7, or the violation of certain constitutional rights, can never be considered harmless error. The facts of the case at bar, however, demonstrate that SJI 2.06 is not one of those instructions.

SJI 2.06 states:

"It has been brought out that an attorney (or his representative) has talked with a witness. An attorney (or his representative) may properly talk with a witness for the purpose of learning what the witness knows about the case and what testimony he will give." ˙

The plaintiff's complaint alleged *inter alia* that the defendants had failed to adequately anchor a balcony railing to the side of their house. A disputed factual issue was whether the defendants had used 2- to 2-1/2-inch screws or 1-inch screws to anchor the railing. Plaintiff's counsel outlined this dispute in his opening statement and indicated that he had engaged an expert witness:

"We expect the evidence [of the defendants] to show * * * that they placed two screws, approximately two and a half inches * * * inside each side of the railing fastening this railing to the house * * *. You will learn that a contractor by the name of Elmer Hunsaker, who went out there shortly after this accident, within days, at my request, and searched the ground very thoroughly, came up with four screws that we hope to prove to you are the actual screws that were in there * * * and they are only one inch long."[1]

Defense counsel did not deny in his opening statement that the 1-inch screws had been found at the scene; nor did he comment on the fact that Mr. Hunsaker had been requested by plaintiff's counsel to make the examination or insinuate that there was anything suspicious or improper about such a request. Instead, he assumed that the screws had been found and offered an alternate explanation for their presence.[2]

The trial lasted two full days and the transcript is 507 pages long. Plaintiff's counsel in passing brought out the fact that he had spoken to Mr. Hunsaker. The innocuous testimony on point covers little more than a single page:

[1] Trial transcript, vol I, p 22.

[2] *Id.,* pp 28-29, 32.

"*Q.* Mr. Hunsaker, do you remember the month of August, 1974?

"*A.* Yes.

"*Q.* And you were contacted by myself, do you recall that?

"*A.* Yes.

"*Q.* What did you do in reference to that contact?

"*A.* You asked me to go out and look at a railing that had broken and somebody had been hurt.

"*Q.* And did you do that?

"*A.* Yes.

"*Q.* Who did you go out there with?

"*A.* Yourself.

"*Q.* All right. What did you do after you got there?

"*A.* We stood on the ground looking up around at the railing. Because your question to me was what would possibly cause that railing to let go.

"*Q.* And how long were you out there?

"*A.* About a half hour.

"*Q.* What else did you do while you were out there?

"*A.* Observing, in the process of observing, I looked down on the ground and I seen some wood screws.

"*Q.* What did you do with those screws?

"*A.* Reached over and picked them up and looked at them.

"*Q.* What did you do with them thereafter?

"*A.* Held them in my hand while I was on the site.

"*Q.* And then what did you do?

"*A.* Later at your office I inserted them into an envelope and signed the envelope."[3]

Again, defense counsel did not comment on the contact between plaintiff's counsel and Mr. Hunsaker and did not insinuate any impropriety.[4] No

---

[3] *Id.,* pp 186-187.

[4] Plaintiff's belated attempt on appeal to color certain questions asked by defense counsel as comments or insinuations is specious at best. When these questions are read in context, whatever minuscule support they give to plaintiff's claim disappears. The questions clearly relate to other matters.

conversation was alluded to excepting a request to view the premises.

No other mention of the fact that plaintiff's counsel had spoken with Mr. Hunsaker was made by anyone during the rest of the trial.

In closing argument, defense counsel not only did not comment on the contact or insinuate any wrongdoing, but affirmatively stated, "I believe Mr. Hunsaker when he says he found them [the 1-inch screws]".[5]

When the trial court indicated, in response to plaintiff's counsel's request for SJI 2.06 (among others), that there had not been any testimony that an attorney had talked to a witness, plaintiff's counsel did not even bring the Hunsaker testimony to the trial court's attention.[6]

In these circumstances, it is clear that the omission of SJI 2.06 did not prejudice the plaintiff. Indeed, ironically, if anyone was prejudiced by this omission, it was the defendants. The defendants had presented testimony that after the railing collapsed, it was reconstructed primarily with the original materials, including the 2- to 2-1/2-inch screws. They then presented testimony from the current owner of the house that a week before the trial he had removed one of the screws from the railing and it was approximately two inches long. No mention was made of any conversation between the owner and defense counsel. Plaintiff's counsel cross-examined as follows:

"*Q.* Mr. Bush *[the current owner]*, this was just as recently as last Saturday that this request was made?
"*A.* Yes.

_____

[5] Trial transcript, vol II, p 218.
[6] *Id.,* pp 266-268.

"*Q. What information was fed you to prepare you for this removal?*

"*A.* Mr. Stroup *[defense counsel]* came and asked me if he could see the house and the rail, and I accompanied him out and removed the screw to show him and put it back. That's it.

"*Q.* Now, on the other side of the railing—that would be the left side facing it—there is a flat head screw in there, is there?

"*A.* Yes, there is.

"*Q. Did he ask you to remove that flat head screw?*

"*A.* No.

"*Q.* Did you remove it at all?

"*A.* No, I didn't.

"*Q.* Do you know how long that screw is?

"*A.* No, I don't.

"*Q.* Did you remove any of the other screws on there?

"*A.* No, sir. Just one."[7] (Emphasis added.)

In closing argument, plaintiff's counsel did comment on this episode:

"Another thing that has troubled me in this case. You heard Mr. Bush testify about that Phillips head screw that he took out and measured. *Why didn't Mr. Stroup have him take out that flat head screw and measure that? Might give that some thought while you are in the jury room, as to why we don't know how long that other flat head screw was that was in there.*"[8] (Emphasis added.)

If defense counsel had requested SJI 2.06 and the judge had refused to give it, that might have constituted prejudicial error. In the circumstances of this case, however, the same cannot be said for the plaintiff. There was no prejudice to him. Fur-

[7] *Id.,* pp 184-185.
[8] *Id.,* pp 236-237.

ther, he failed to direct the judge's attention to any record support for his request. We doubt that these defendants, and the other litigants like them who in the future will be put to the task of another trial, will understand the niceties of or the reasons for the *Javis* rule.

Recent events have made it painfully clear that the courts can no longer afford the extravagance of unnecessary trials. We would modify the absolute rule established by *Javis* and hold that the omission of SJI 2.06 in this particular case does not require reversal of the jury's no cause verdict.

## II

In *Javis, supra* at 702, the Court, cognizant of the strictness of the rule it was establishing, decreed the following prerequisites to invocation of the rule:

"[t]he initial burden is on the parties to request SJI that they may deem accurate and applicable. If the court should disagree, *a party bears the burden of pointing out to the court why it considers SJI applicable and accurate."* (Emphasis added.)

Plaintiff's counsel in the case at bar failed to comply with the second of these requirements.

After the jury had been instructed, but before it had begun deliberations, plaintiff's counsel objected to the trial court's omission of requested Standard Jury Instructions in a classic example of the "shotgun" approach:

"[I]n reference to plaintiff's proposed instructions: Number one, I would object to the court not having given requested instructions 2.06, 2.11, 11.02, 12.05,

23.01. And for the reason that the evidence supports their having been given."[9]

In response, the trial court first clearly indicated that it did not recall any testimony about an attorney talking to a witness:

"It seems to me that there really wasn't any testimony brought out that an attorney talked to a witness, unless you want to infer that the deposition represents an attorney talking to a witness."[10]

Then, after defense counsel stated that there had not even been any argument concerning the subject, the court clearly indicated its disagreement with plaintiff's counsel's request for SJI 2.06:

"No, I really don't see the necessity for it * * *."[11]

Immediately following this exchange, the trial court addressed *seriatim* the rest of the Standard Jury Instructions requested by plaintiff's counsel and indicated why it disagreed with each.[12] Then,

[9] *Id.,* pp 263-264.

[10] *Id.* p 266.

[11] *Id.,* pp 266-267.

[12] "No, I really don't see the necessity for it, Mr. Sumpter. With regard to 2.11, there was no evidence of deposition testimony. I think that's true that admissions of a party are evidence for substantive purposes, but I think you developed those admissions by interrogating the witnesses on the witness stand as to what was said in the deposition. So it was not necessary to introduce the deposition itself. And that was the reason that the court did not permit the deposition to go into evidence because the deposition contained a lot of extraneous information, extraneous to the admission. So if the particular statement contained in the deposition was read into the record, then it seems to me there is sufficient evidence of that statement or admission before the jury. And I really don't see the application of instruction 2.11 for that reason.

"With regard to 11.02, well, 11.02 as an instruction of contributory negligence is not an issue. And, obviously, the court does not believe that.

"23.01 is an instruction that the defendant has admitted liability.

plaintiff's counsel had an opportunity to respond. That response was limited to SJI 23.01 (defendant has admitted liability), and made no mention of Mr. Hunsaker's testimony.[13]

So long as strict compliance under penalty of automatic reversal is to remain the rule, we would require the moving party to do more than plaintiff's counsel did in the case at bar. As a minimum, the testimony allegedly supporting the requested instruction should be brought to the trial court's attention. Persistence may be required, but the severity of the *Javis* rule mandates that this be done, so that the trial court can make an informed decision and so that retrials can be reduced to a minimum. This is, we believe, what the *Javis* Court had in mind. The less than diligent effort illustrated by this case makes it far too easy for counsel to fashion a "handy appellate parachute" for use in the event that the results at trial are unfavorable.

We agree with Justice FITZGERALD as to his Part II.

We would affirm the decisions of the Court of Appeals and the trial court.

RYAN, J., concurred with COLEMAN, C.J.

---

And this court recalls no testimony that the defendant admitted liability." *Id.,* pp 266-267.

[13] "Plaintiff's theory is that the admission that it's an ornamental railing is an admission of liability, both in the pleadings and under oath." *Ibid.*